Lenard E. Schwartzer
Nevada Bar No. 0399
Jeanette E. McPherson
Nevada Bar No. 5423
Jason A. Imes
Nevada Bar No. 7030
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com
Attorneys for Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No. BK- BK-S-10-20027 MKN |
| DAVID L. SPECKMAN and KAROL S. SPECKMAN,<br>Debtors. | Chapter 11<br>**DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION**<br>Date:<br>Time: |

David L. Speckman and Karol S. Speckman ("Debtors"), by and through their undersigned counsel, hereby propose Debtors' Plan of Reorganization ("Plan") pursuant to section 1121(c) of the Bankruptcy Code for the resolution of Debtors' outstanding creditor Claims and Equity Interests. Reference is made to the Disclosure Statement (as that term is defined herein) distributed contemporaneously herewith, for a discussion of the Debtors' history, business, results of operations, projections for future operations, risk factors, a summary and analysis of the Plan, and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

All holders of Claims are encouraged to read this Plan and the Disclosure Statement in their entirety before voting to accept or reject this Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Fed.R. Bankr. P. 3019 and Article XIII of this Plan, the Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation.

# ARTICLE I
## DEFINITIONS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME AND GOVERNING LAW

**1.1    Scope Of Definitions; Rules of Construction.**

For the purpose of the Plan and the accompanying Disclosure Statement, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meaning ascribed to them in Article I of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.  Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

**1.2    Definitions.**

1.21    "Administrative Claim" means a Claim for payment of an administrative expense of a kind specified in section 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code, including, but not limited to, (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the business of the Debtors, including wages, salaries, or commissions for services rendered after commencement of the Chapter 11 Case, (b) Professional Fee Claims, (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930.

1.22    "Administrative Claim Bar Date" means the end of the first Business Day occurring on or after the sixtieth (60th) day after the Confirmation Date.

1.23    "Allowed" means with reference to any Claim against or equity interest in the Debtors, (a) any Claim which has been listed by the Debtors in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim or objection to Claim has been filed, (b) any Claim or equity interest allowed hereunder, (c) any Claim, proof of which was filed on or before the Bar Date, or, with respect to a Governmental Unit, before the Governmental Unit Claims Bar Date, or equity interest, which is not Disputed, (d) any Claim or equity interest that is compromised, settled or otherwise resolved pursuant to a Final Order of the

2

Bankruptcy Court, or (e) any Claim or equity interest which, if Disputed, has been allowed by Final Order.

1.24    "Appraisal" means any appraisal pertaining to the specifically name real property.

1.25    "Avoidance Action(s)" means a cause of action brought pursuant to sections 542, 543, 544, 545, 547, 548 or 549 of the Bankruptcy Code.

1.26    "Ballot" means the Ballot for accepting or rejecting this Plan in a form approved by the Bankruptcy Court.

1.27    "Ballot Date" means the last date determined by the Bankruptcy Court for the casting of Ballots.

1.28    "Bankruptcy Code" means Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as now in effect or hereafter amended.

1.29    "Bankruptcy Court" means the United States Bankruptcy Court for the District of Nevada or such other court as may have jurisdiction over the Chapter 11 Case.

1.30    "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable in the Chapter 11 Case or proceedings therein, as the case may be.

1.31    "Bar Date" means the date established by order of the Bankruptcy Court as the last day for the filing of proofs of claims against the Debtors; provided that the deadline for filing proofs of claim by a Governmental Unit shall be the Governmental Unit Claims Bar Date.

1.32    "Business Day" means any day, excluding Saturdays, Sundays or "legal holidays" (as defined in Fed. R. Bankr. P. 9006(a)), on which commercial banks are open for business in Las Vegas, Nevada.

1.33    "Cash" means currency, certified checks, official checks, money orders, negotiable instruments, and wire transfers of immediately available funds.

1.34    "Chapter 11 Case" means the Chapter 11 case of the Debtors, including all adversary proceedings pending in connection therewith.

plan 073010

1.35    "Claim" means a claim, as defined in section 101(5) of the Bankruptcy Code, against a Person or its property, including, without limitation: (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured arising at any time before the Effective Date; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.36    "Claims Objection Deadline" means the last day for filing objections to Disputed Claims, which shall be 60 days after the Confirmation Date.

1.37    "Class" means one of the classes of Claims or Interests herein described.

1.38    "Collateral" means the real or personal property intended to secure a Claim.

1.39    "Confirmation" means the entry by the Bankruptcy Court of the Confirmation Order.

1.40    "Confirmation Date" means the date of entry by the clerk of the Bankruptcy Court of the Confirmation Order.

1.41    "Confirmation Hearing" means the hearing to consider the confirmation of the Plan under section 1128 of the Bankruptcy Code.

1.42    "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan.

1.43    "Creditor" means a creditor as set forth in section 101(10) of the Bankruptcy Code.

1.44    "Cure" means the distribution of Cash, or other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption of an executory contract or unexpired lease pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed by the parties, under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law.

1.45    "Debtors" mean David and Karol Speckman.

1.46    "Disclosure Statement" means the written disclosure statement that relates to the Plan, as amended, supplemented, or modified from time to time, and that is prepared and distributed in accordance with section 1125 of the Bankruptcy Code and Fed. R. Bankr. P. 3018.

1.47    "Disputed" means with respect to claims, a Claim: (a) that is listed in the Schedules as unliquidated, disputed, or contingent and as to which no proof of claim has been filed; or (b) as to which the Debtors or any other proper party-in-interest has interposed a timely objection or request for estimate, or has sought to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, or which is otherwise disputed by the Debtors in accordance with applicable law and as to which such objection, request for estimation, or request for subordination has not been withdrawn or determined by a Final Order.

1.48    "Distribution" means any distribution by the Debtors of monies to the holders of Allowed Claims.

1.49    "Distribution Date" means with respect to the holder of an Allowed Claim, the date upon which such holder receives a Distribution under the Plan on account of such Allowed Claim.

1.50    "Effective Date" means the later of: (a) the first Business Day that is at least eleven (11) days after the Confirmation Date and on which no stay of the Confirmation Order is in effect; and (b) the Business Day on which all of the conditions set forth in Article VII of the Plan have been satisfied.

1.51    "Equity Interest" means an interest in the Debtors.

1.52    "Estate" means the estate created for the Debtors in the Chapter 11 case pursuant to section 541 of the Bankruptcy Code.

1.53    "Final Decree" means a final decree closing this Chapter 11 case.

1.54    "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Case, the operation or effect of which, not having been reversed, modified, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal from or to seek review or rehearing of has expired and as to which no appeal or petition for review or rehearing was filed or, if

5

filed, remains pending.

1.55   "General Unsecured Claim" means an Unsecured Claim against the Debtors that is not an Administrative Claim, Priority Tax Claim, Other Priority Claim, or Secured Claim.

1.56   "Impaired" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.57   "Insider" means any individual or entity meeting the description set forth in section 101(31) of the Bankruptcy Code.

1.58   "Interest(s)" means an equity interest in the Debtors.

1.59   "Lien(s)" means a lien as defined in section 101(37) of the Bankruptcy Code, except a lien that has been avoided in accordance with sections 506, 544, 545, 546, 547, 548, 549, or 553 of the Bankruptcy Code.

1.60   "Other Definitions" means a term used in this Plan that is not defined in this Plan, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed thereto in the Bankruptcy Code or Bankruptcy Rules.

1.61   ""Person" means person as defined in section 101(41) of the Bankruptcy Code.

1.62   "Petition Date" means the date the Debtors filed its petition for relief commencing the Chapter 11 Case or February 9, 2009.

1.63   "Plan" means this Chapter 11 reorganization plan and all exhibits annexed hereto or referenced herein, as the same may be amended, modified, or supplemented from time to time.

1.64   "Plan Exhibit" means any exhibit attached hereto.

1.65   "Priority Claim" means a Claim entitled to priority in Bankruptcy Code §§ 507(a)(2)-(8).

1.66   "Pro Rata" means the ratio of an Allowed Claim in a particular class to the aggregate amount of all such Allowed Claim in any such Class.

1.67   "Professional" means any professional employed in the Chapter 11 Case pursuant to sections 327 or 1103 of the Bankruptcy Code or otherwise and any professional seeking

6

compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to section 503(b)(4) of the Bankruptcy Code.

1.68    "Professional Fee(s)" means the Administrative Claims for compensation and reimbursement of expenses of Professionals submitted in accordance with sections 330 or 331 of the Bankruptcy Code, or any Administrative Claims Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

1.69    "Professional Fee Claim" means a Claim of a professional for compensation or reimbursement of costs and expenses relating to services incurred after the Petition Date and prior to and including the Effective Date.

1.70    "Reorganization Case" means the Debtors' case under Chapter 11 of the Bankruptcy Code which is currently pending before this Bankruptcy Court.

1.71    "Schedules" means the schedules of assets and liabilities and the statement of financial affairs filed in the Bankruptcy Court by the Debtors as such schedules or statements as may be amended or supplemented from time to time in accordance with Fed. R. Bankr. P. 1009.

1.72    "Secured Claim" means (a) a Claim against the Debtors secured by a Lien on any assets, which Lien is valid, perfected, and enforceable under applicable law and is not void or subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, and which is duly established in the Chapter 11 case, but only to the extent of the value of the holder's interest in the Debtors' interest in the assets that secure payment of the Claim; (b) a Claim against the Debtors that is subject to a valid right of recoupment or setoff under section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject to recoupment or setoff as provided in section 506(a) of the Bankruptcy Code; and (c) a Claim deemed or treated under the Plan as a Secured Claim; provided, that, to the extent that the amount of any such Secured Claim is less than the amount of the Claim which has the benefit of any such Lien or right of recoupment or setoff, the balance of such Claim shall be treated as a General Unsecured Claim.

1.73    "Tax Claims" means any Claims of a Governmental Unit for property taxes whether such liability is *in rem*, *in personam*, or both.

1.74    "Trustee" means the United States Trustee.

7

plan 073010

1.75    "Unimpaired" means when used with reference to a Claim or Interest, a Claim or Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

1.76    "Unsecured Claim" means any Claim that is not a Secured Claim, a Priority Claim, or an Administrative Claim, or an unclassified Claim of the kind described by Section 507(a)(8) of the Bankruptcy Code.  Unsecured Claim shall not include the Allowed Equity Interest.

**1.3**    **Rules of Interpretation.**

For purposes of the Plan (a) any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented, (c) unless otherwise specified, all references in the Plan to Sections, Articles, Schedules and Exhibits of or to the Plan, (d) the words "herein" and "hereto" refer to the Plan in its entirety rather than a particular portion of the Plan, (e) captions and heading to Articles and sections are inserted for convenience of reference only and are not intended to be part of or to affect the interpretation of the Plan, and (f) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

**1.4**    **Computation of Time.**

In computing any period of time prescribed or allowed by the Plan, the provisions of Fed. R. Bankr. P. 9006(a) shall apply.

**1.5**    **Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (i) the State of Nevada shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan and (ii) the laws of the State of Nevada shall govern corporate governance matters with respect to the Debtors.

/ / /

/ / /

8

plan 073010

## ARTICLE II
## TREATMENT OF UNCLASSIFIED CLAIMS

**2.1.** **Unclassified Claims.** As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims against the Debtors are not classified for purposes of voting on, or receiving distributions under, the Plan. Holders of such Claims are not entitled to vote on the Plan. All such Claims instead are treated separately in accordance with this Article 2 and in accordance with the requirements set forth in section 1129(a)(9)(A) of the Bankruptcy Code.

**2.2.** **Administrative Claims.**

**2.2.1. Generally.** Except as otherwise provided for in the Plan, and subject to the requirements of the Plan, on, or as soon as reasonably practicable after, the latest of: (1) the Distribution Date, (2) the date such Administrative Claim becomes an Allowed Administrative Claim, or (3) the date such Administrative Claim becomes payable pursuant to any agreement between the Debtors and the holder of such Administrative Claim, each holder of an Allowed Administrative Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Administrative Claim: (a) cash equal to the unpaid portion of such Allowed Administrative Claim or (b) such treatment as to which the Debtors and such holder has agreed in writing; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course during the Chapter 11 case shall be paid in accordance with the terms and conditions of any agreements relating thereto. The Administrative Claims shall be paid from the Debtors' cash on hand and earnings.

**2.2.2. Requests for Payment.** All requests for payment of Administrative Claims must be filed by the Administrative Claim Bar Date or the holders thereof shall be forever barred from asserting such Administrative Claims against the Debtors.

**2.3.** **Allowed Priority Tax Claims.** All holders of Allowed Priority Tax Claims against the Debtors entitled to priority in payment as specified in section 502(i) and 507(a)(8) of the Bankruptcy Code, whether prepetition or postpetition, to the extent such Claims are allowed by the Court shall be entitled to receive, on account of such Allowed Priority Tax Claim in full satisfaction,

9

settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, equal

monthly, consecutive cash payments beginning on the last Business Day of the three-month period

following the Effective Date, and continuing until completed no later than five (5) years after the date

of the order for relief plus interest on any outstanding balance from the Effective Date in accordance

with applicable nonbankruptcy law, which is interest at the rate of 6% per annum, or fraction of

month, from the last day of the month following the period for which the amount of any portion of

the amount that should have been reported until the date of payment. The Debtors estimate that

Allowed Priority Tax Claims will total approximately $33,000.

    **2.4. Post-Effective Date Professional Fees**. All Professional Fees for services rendered in

connection with the Chapter 11 Case and the Plan after the Effective Date may be paid by the

Debtors upon receipt of an invoice for such services, or on such other terms to which the

Debtors and the relevant Professional may agree, without the need for further

Bankruptcy Court authorization or entry of a Final Order.

**ARTICLE III**
**CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS**

    **3.1      Introduction.**  All Claims and Equity Interests, except Administrative Claims and

Priority Tax Claims, are placed in the Classes set forth below. In accordance with section 1123(a)(1)

of the Bankruptcy Code, the Administrative Claims and Priority Tax Claims have not been

classified. The respective treatment of unclassified claims is set forth in Article II of this Plan.

    A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or

Equity Interest falls within the description of that Class, and is classified in other Classes to the

extent that any portion of the Claim or Equity Interest falls within the description of such other

Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions

pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such

Claim has not been paid, released, or otherwise settled prior to the Effective Date.

    For ease of review, the following chart summarizes the Classes of Claims under this Plan:

| Class 1 | Secured Tax Claims | Impaired – Solicitation Required |
|---|---|---|
| Class 2 | Americas Servicing Co. (7415 Vintage Hills, Austin, Texas) | Impaired – Solicitation Required |

plan 073010

| | | |
|---|---|---|
| Class 3 | Americas Servicing Co.<br>(7417 Vintage Hills, Austin, TX) | Impaired – Solicitation Required |
| Class 4 | Bac Home Loans Servicing<br>(39 E Agate Ave, #207, Las Vegas, NV 89123) | Impaired – Solicitation Required |
| Class 5 | Bac Home Loans Servicing<br>(8824 Martin Downs Place, Las Vegas, NV 89131) | Impaired – Solicitation Required |
| Class 6 | Bac Home Loans Servicing<br>(3125 Sequoia Avenue, Las Vegas, NV 89101) | Impaired – Solicitation Required |
| Class 7 | Bac Home Loans Servicing<br>(3348 Palio Avenue, Las Vegas, NV 89122) | Impaired – Solicitation Required |
| Class 8 | Bac Home Loans Servicing<br>(Frisco Lane, Tupelo, MS) | Impaired – Solicitation Required |
| Class 9 | Bac Home Loans Servicing<br>(8824 Martin Downs Place, Las Vegas, NV 89131) | Impaired – Solicitation Required |
| Class 10 | Bac Home Loans Servicing<br>(2606 S Durango Drive, #187, Las Vegas, NV 89122) | Impaired – Solicitation Required |
| Class 11 | Chase<br>(7918 Mainland Woods, San Antonio Texas) | Impaired – Solicitation Required |
| Class 12 | EMC Mortgage<br>(1405 Vegas Valley Drive, #85, Las Vegas, NV 89169) | Impaired – Solicitation Required |
| Class 13 | EMC Mortgage<br>(1405 Vegas Valley Drive, #347, Las Vegas, NV 89169) | Impaired – Solicitation Required |
| Class 14 | Flagstar Bank<br>(3807 Aspen Creek Avenue, Las Vegas, NV 89031) | Impaired – Solicitation Required |
| Class 15 | Flagstar Bank<br>(3334 Palio Avenue, Las Vegas, NV 89031) | Impaired – Solicitation Required |
| Class 16 | Flagstar Bank<br>(5301 Sly Fox Court, Las Vegas, NV) | Impaired – Solicitation Required |
| Class 17 | Green Tree<br>(7417 Vintage Hills, Austin, Texas) | Impaired – Solicitation Required |
| Class 18 | Green Tree<br>(7415 Vintage Hills, Austin, Texas) | Impaired – Solicitation Required |
| Class 19 | Interval Servicing<br>(HOA Lien Timeshare- the Royal Caribbean- Interval 19) | Impaired – Solicitation Required |
| Class 20 | Interval Servicing<br>(HOA Lien Timeshare- the Royal Caribbean- Interval 20) | Impaired – Solicitation Required |
| Class 21 | M&T Bank<br>(241 Kilpatrick Street, Baldwyn, Mississippi 38824) | Impaired – Solicitation Required |
| Class 22 | NCB<br>(1414 Oliver Avenue, San Diego, California) | Unimpaired |
| Class 23 | Nevada Federal Credit Union<br>(4075 N Rancho Drive, Las Vegas, NV) | Impaired – Solicitation Required |
| Class 24 | Nevada Federal Credit Union<br>(4145 N Rancho Drive, Las Vegas &<br>4075 North Rancho Drive, Las Vegas, NV) | Impaired – Solicitation Required |
| Class 25 | Nevada Federal Credit Union<br>(4145 N Rancho Dr, Las Vegas, NV and<br>4075 N. Rancho Drive, Las Vegas, NV) | Impaired – Solicitation Required |
| Class 26 | Onewest Bank<br>(1405 Vegas Valley Drive, #347, Las Vegas, NV 89169) | Impaired – Solicitation Required |
| Class 27 | Onewest Bank<br>(1405 Vegas Valley Drive, #85, Las Vegas, NV 89169) | Impaired – Solicitation Required |
| Class 28 | PNC Mortgage<br>(1414 Oliver Avenue, San Diego, California) | Unimpaired |
| Class 29 | Wells Fargo Bank NV<br>(4380 Sandy River Drive, #35, Las Vegas, NV) | Impaired – Solicitation Required |

plan 073010

| Class 30 | Wells Fargo Hm Mortgage (2609 W French, San Antonio, Texas) | Impaired – Solicitation Required |
|----------|--------------------------------------------------|---------------------------------|
| Class 31 | Wells Fargo Hm Mortgage (2613 W French, San Antonio, Texas) | Impaired – Solicitation Required |
| Class 32 | Bella Vita HOA | Impaired – Solicitation Required |
| Class 33 | Casa Vegas HOA | Impaired – Solicitation Required |
| Class 34 | Creekside Owners Association | Impaired – Solicitation Required |
| Class 35 | Pine Knott Owners Association | Impaired – Solicitation Required |
| Class 36 | Rancho Alexander Business Park | Impaired – Solicitation Required |
| Class 37 | Silverstone Ranch Association | Impaired -- Solicitation Required |
| Class 38 | Southern Highlands Comm Assoc. | Impaired – Solicitation Required |
| Class 39 | Southern Highlands Comm Assoc. | Impaired – Solicitation Required |
| Class 40 | Symphony HOA | Impaired – Solicitation Required |
| Class 41 | General Unsecured Claims | Impaired – Solicitation Required |

## ARTICLE IV
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 4.1.1.  Class 1:  Secured Tax Claims – Impaired.

Impairment and Voting.  Class 1 consists of Secured Tax Claims.  Class 2 consists of secured property taxes.  The Debtors estimate that the secured property taxes are in the amount of $30,754.12.  The holders of Secured Tax Claims are impaired under the Plan; consequently, the holders of the Secured Tax Claims are entitled to vote on the Plan.

Treatment.  All holders of Secured Tax Claims against the Debtors, whether prepetition or postpetition, to the extent such Claims are allowed by the Court shall retain their liens to the extent of the allowed amount of such Allowed Secured Tax Claim and be entitled to receive, on account of such Allowed Secured Tax Claim in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Tax Claim, equal monthly, consecutive cash payments beginning on the first Business Day of the month following the Effective Date, and continuing until completed no later than five (5) years after the date of the order for relief plus interest on any outstanding balance from the Effective Date under applicable nonbankruptcy law together with interest at the rate of 2% or the interest rate for 5 year treasury notes on the day of confirmation, whichever is higher.  The payments will amortize the debt in 5 years.

### 4.1.2.  Class 2:  Americas Servicing Co. (7415 Vintage Hills, Austin, Texas) - Impaired.

plan 073010

   Impairment and Voting. Class 2 consists of the Americas Servicing Co. Claim relating to 7415 Vintage Hills, Austin, Texas. The Debtors estimate that Americas Servicing Co. has a Claim in the amount of $134,170.00 that is secured in the approximate amount of $115,000.00. The holder of the Americas Servicing Co. Claim is impaired under the Plan; consequently, the holder of the Americas Servicing Co. Claim is entitled to vote on the Plan.

   Treatment.  Unless the holder of the Americas Servicing Co. elects treatment under Section 1111(b)(2) of the Bankruptcy Code, in full and final satisfaction of its Claim, the holder of the Allowed Americas Servicing Co. Secured Claim shall (i) receive an Amended Americas Servicing Co. Note and Amended Americas Servicing Co. Deed of Trust in an amount equal to $115,000 (the amount of the Allowed Secured Claim is determined on the assumption that the value of such Claimant's interest in the Debtors' interest in the Collateral is equal to $115,000) payable in equal monthly installments over 15 years bearing interest at the rate of 3.9%, and as a condition to payment, Americas Servicing Co., or its successors in interest if applicable, shall execute and deliver to Debtors all such documentation which Debtors deem necessary to effectuate a release of the applicable Liens against the Collateral of Debtors, and (ii) receive an Allowed General Unsecured Claim for the amount due it in excess of $115,000, or approximately $19,170.

   However, if the holder of the Americas Servicing Co. Claim has elected the option for treatment under Section 1111(b)(2) of the Bankruptcy Code in accordance with Bankruptcy Rule 3014, the holder of the Allowed Claim shall receive, in full and final satisfaction of its Claim, equal monthly installments over a period of 30 years, deferred cash payments totaling at least the amount of the Allowed Claim, with a value as of the Effective Date of at least the holder's interest in the estate's interest in the Collateral securing such Claim ($115,000). By no later than the later of (a) the Effective Date or (b) fifteen (15) days after the Claim becomes an Allowed Secured Claim, Debtors shall execute and deliver to the holder of the Americas Servicing Co. Secured Claim an amended non-recourse promissory note (the "Amended Americas Servicing Co. Election Note") evidencing such payment terms and bearing a 4.57% interest rate.

   If the holder of the Americas Servicing Co. Allowed Secured Claim has elected such treatment under Section 1111(b)(2) it shall retain its Liens to secure repayment of the Amended

plan 073010

Americas Servicing Co. Election Note until such Amended Americas Servicing Co. Election Note is fully paid or until the holder otherwise agrees. Upon satisfaction of the Amended Americas Servicing Co. Election Note, the holder thereof shall promptly execute and deliver to Debtors all such documentation which Debtors deem necessary to effectuate a release of the holder's Liens against Collateral of Debtors. The Amended Americas Servicing Co. Election Note may be prepaid by Debtors or on behalf of Debtors at any time without penalty; however, Debtors must pay the difference between the Americas Servicing Co. Allowed Claim and the outstanding balance remaining due under the Amended Americas Servicing Co. Election Note, plus the payments made to the present. The holder of the Americas Servicing Co. Secured Claim who has elected treatment under Section 1111(b)(2) of the Bankruptcy Code shall have no recourse against Debtors. In the event of a default under the Amended Americas Servicing Co. Election Note, such recourse shall be limited to the Collateral to which such Liens are attached.

### 4.1.3. Class 3: Americas Servicing Co (7417 Vintage Hills, Austin, TX) - Impaired.

Impairment and Voting. Class 3 consists of the Americas Servicing Co. Claim relating to 7417 Vintage Hills, Austin, Texas. The Debtors estimate that Americas Servicing Co. has a Claim in the amount of $134,174.00 that is secured in the approximate amount of $115,000.00. The holder of the Americas Servicing Co. Claim is impaired under the Plan; consequently, the holder of the Americas Servicing Co. Claim is entitled to vote on the Plan.

Treatment.    Unless the holder of the Americas Servicing Co. Claim elects treatment under Section 1111(b)(2) of the Bankruptcy Code, in full and final satisfaction of its Claim, the holder of the Allowed Americas Servicing Co. Secured Claim shall (i) receive an Amended Americas Servicing Co. Note and Amended Americas Servicing Co. Deed of Trust in an amount equal to $115,000 (the amount of the Allowed Secured Claim is determined on the assumption that the value of such Claimant's interest in the Debtors' interest in the Collateral is equal to $115,000) payable in equal monthly installments over the remaining 15 years bearing interest at the rate of 3.9%, and as a condition to payment, Americas Servicing Co., or its successors in interest if applicable, shall execute and deliver to Debtors all such documentation which Debtors deem necessary to effectuate a release

plan 073010

of the applicable Liens against the Collateral of Debtors, and (ii) receive an Allowed General

Unsecured Claim for the amount due it in excess of $115,000, or approximately $19,170.00.

However, if the holder of the Americas Servicing Co. Claim has elected the option for treatment under Section 1111(b)(2) of the Bankruptcy Code in accordance with Bankruptcy Rule 3014, the holder of the Allowed Claim shall receive, in full and final satisfaction of its Claim, equal monthly installments over a period of 30 years, deferred cash payments totaling at least the amount of the Allowed Claim, with a value as of the Effective Date of at least the holder's interest in the estate's interest in the Collateral securing such Claim ($115,000). By no later than the later of (a) the Effective Date or (b) fifteen (15) days after the Claim becomes an Allowed Secured Claim,  Debtors shall execute and deliver to the holder of the Americas Servicing Co. Secured Claim an amended non-recourse promissory note (the "Amended Americas Servicing Co. Election Note") evidencing such payment terms and bearing a 4.57% interest rate.

If the holder of the Americas Servicing Co. Allowed Secured Claim has elected such treatment under Section 1111(b)(2) it shall retain its Liens to secure repayment of the Amended Americas Servicing Co.  Election Note until such Amended Americas Servicing Co.  Election Note is fully paid or until the holder otherwise agrees.  Upon satisfaction of the Amended Americas Servicing Co.  Election Note, the holder thereof shall promptly execute and deliver to  Debtors all such documentation which  Debtors deem necessary to effectuate a release of the holder's Liens against Collateral of  Debtors.  The Amended Americas Servicing Co.  Election Note may be prepaid by  Debtors or on behalf of  Debtors at any time without penalty; however,  Debtors must pay the difference between the Americas Servicing Co. Allowed Claim and the outstanding balance remaining due under the Amended Americas Servicing Co.  Election Note, plus the payments made to the present.  The holder of the Americas Servicing Co.  Secured Claim who has elected treatment under Section 1111(b)(2) of the Bankruptcy Code shall have no recourse against  Debtors.  In the event of a default under the Amended Americas Servicing Co.  Election Note, such recourse shall be limited to the Collateral to which such Liens are attached.

**4.1.4.   Class 4:  Bac Home Loans Servicing (39 E. Agate Ave., #207, Las Vegas, Nevada 89123) - Impaired.**

       Impairment and Voting. Class 4 consists of the Bac Home Loans Servicing Claim relating to 39 E. Agate Ave., #207, Las Vegas, Nevada 89123. The Debtors estimate that Bac Home Loans Servicing has a Claim in the amount of $127,544.00 that is secured in the approximate amount of $98,000.00. The holder of the Bac Home Loans Servicing Claim is impaired under the Plan; consequently, the holder of the Bac Home Loans Servicing Claim is entitled to vote on the Plan.

       Treatment.      Unless the holder of the Bac Home Loans Servicing Claim elects treatment under Section 1111(b)(2) of the Bankruptcy Code, in full and final satisfaction of its Claim, the holder of the Allowed Bac Home Loans Servicing Secured Claim shall (i) receive an Amended Bac Home Loans Servicing Note and Amended Bac Home Loans Servicing Deed of Trust in an amount equal to $98,000 (the amount of the Allowed Secured Claim is determined on the assumption that the value of such Claimant's interest in the Debtors' interest in the Collateral is equal to $98,000) payable in equal monthly installments over the remaining 15 years bearing interest at the rate of 3.9%, and as a condition to payment, Bac Home Loans Servicing, or its successors in interest if applicable, shall execute and deliver to Debtors all such documentation which Debtors deem necessary to effectuate a release of the applicable Liens against the Collateral of Debtors, and (ii) receive an Allowed General Unsecured Claim for the amount due it in excess of $98,000, or approximately $29,544.

       However, if the holder of the Bac Home Loans Servicing Claim has elected the option for treatment under Section 1111(b)(2) of the Bankruptcy Code in accordance with Bankruptcy Rule 3014, the holder of the Allowed Claim shall receive, in full and final satisfaction of its Claim, equal monthly installments over a period of 30 years, deferred cash payments totaling at least the amount of the Allowed Claim, with a value as of the Effective Date of at least the holder's interest in the estate's interest in the Collateral securing such Claim ($98,000). By no later than the later of (a) the Effective Date or (b) fifteen (15) days after the Claim becomes an Allowed Secured Claim, Debtors shall execute and deliver to the holder of the Bac Home Loans Servicing Secured Claim an amended non-recourse promissory note (the "Amended Bac Home Loans Servicing Election Note") evidencing such payment terms and bearing a 4.57% interest rate.

plan 073010

If the holder of the Bac Home Loans Servicing Allowed Secured Claim has elected such treatment under Section 1111(b)(2) it shall retain its Liens to secure repayment of the Amended Bac Home Loans Servicing Election Note until such Amended Bac Home Loans Servicing Election Note is fully paid or until the holder otherwise agrees. Upon satisfaction of the Amended Bac Home Loans Servicing Election Note, the holder thereof shall promptly execute and deliver to Debtors all such documentation which Debtors deem necessary to effectuate a release of the holder's Liens against Collateral of Debtors. The Amended Bac Home Loans Servicing Election Note may be prepaid by Debtors or on behalf of Debtors at any time without penalty; however, Debtors must pay the difference between the Bac Home Loans Servicing Allowed Claim and the outstanding balance remaining due under the Amended Bac Home Loans Servicing Election Note, plus the payments made to the present. The holder of the Bac Home Loans Servicing Secured Claim who has elected treatment under Section 1111(b)(2) of the Bankruptcy Code shall have no recourse against Debtors. In the event of a default under the Amended Bac Home Loans Servicing Election Note, such recourse shall be limited to the Collateral to which such Liens are attached.

**4.1.5.   Class 5:  Bac Home Loans Servicing (8824 Martin Downs Place, Las Vegas, Nevada 89131) - Impaired.**

Impairment and Voting. Class 5 consists of the Bac Home Loans Servicing Claim relating to a junior deed of trust recorded against 8824 Martin Downs Place, Las Vegas, Nevada 89131. The Debtors estimate that Bac Home Loans Servicing has a claim of $76,847 which amount is wholly unsecured. The holder of the Bac Home Loans Servicing Claim is impaired under the Plan; consequently, the holder of the Bac Home Loans Servicing Claim is entitled to vote on the Plan.

Treatment. The holder of the Bac Home Loans Servicing Claim shall be treated in accordance with holders of General Unsecured Claims.

**4.1.6.   Class 6:  Bac Home Loans Servicing (3125 Sequoia Avenue, Las Vegas, Nevada 89101) - Impaired.**

Impairment and Voting. Class 6 consists of the Bac Home Loans Servicing Claim relating to 3125 Sequoia Avenue, Las Vegas, Nevada 89101. The Debtors estimate that Bac Home

plan 073010

Loans Servicing has a Claim in the amount of $137,867.00 that is secured in the approximate amount of $64,000.00. The holder of the Bac Home Loans Servicing Claim is impaired under the Plan; consequently, the holder of the Bac Home Loans Servicing Claim is entitled to vote on the Plan.

Treatment. Unless the holder of the Bac Home Loans Servicing Claim elects treatment under Section 1111(b)(2) of the Bankruptcy Code, in full and final satisfaction of its Claim, the holder of the Allowed Bac Home Loans Servicing Secured Claim shall (i) receive an Amended Bac Home Loans Servicing Note and Amended Bac Home Loans Servicing Deed of Trust in an amount equal to $64,000 (the amount of the Allowed Secured Claim is determined on the assumption that the value of such Claimant's interest in the Debtors' interest in the Collateral is equal to $64,000) payable in equal monthly installments over the remaining 15 years bearing interest at the rate of 3.9%, and as a condition to payment, Bac Home Loans Servicing, or its successors in interest if applicable, shall execute and deliver to Debtors all such documentation which Debtors deem necessary to effectuate a release of the applicable Liens against the Collateral of Debtors, and (ii) receive an Allowed General Unsecured Claim for the amount due it in excess of $64,000, or approximately $73,867.00.

However, if the holder of the Bac Home Loans Servicing Claim has elected the option for treatment under Section 1111(b)(2) of the Bankruptcy Code in accordance with Bankruptcy Rule 3014, the holder of the Allowed Claim shall receive, in full and final satisfaction of its Claim, equal monthly installments over a period of 30 years, deferred cash payments totaling at least the amount of the Allowed Claim, with a value as of the Effective Date of at least the holder's interest in the estate's interest in the Collateral securing such Claim ($64,000). By no later than the later of (a) the Effective Date or (b) fifteen (15) days after the Claim becomes an Allowed Secured Claim, Debtors shall execute and deliver to the holder of the Bac Home Loans Servicing Secured Claim an amended non-recourse promissory note (the "Amended Bac Home Loans Servicing Election Note") evidencing such payment terms and bearing a 4.57% interest rate.

If the holder of the Bac Home Loans Servicing Allowed Secured Claim has elected such treatment under Section 1111(b)(2) it shall retain its Liens to secure repayment of the Amended

plan 073010

1  Bac Home Loans Servicing Election Note until such Amended Bac Home Loans Servicing Election

2  Note is fully paid or until the holder otherwise agrees.  Upon satisfaction of the Amended Bac Home

3  Loans Servicing Election Note, the holder thereof shall promptly execute and deliver to  Debtors all

4  such documentation which  Debtors deem necessary to effectuate a release of the holder's Liens

5  against Collateral of Debtors.  The Amended Bac Home Loans Servicing Election Note may be

6  prepaid by  Debtors or on behalf of  Debtors at any time without penalty; however,  Debtors must pay

7  the difference between the Bac Home Loans Servicing Allowed Claim and the outstanding balance

8  remaining due under the Amended Bac Home Loans Servicing Election Note, plus the payments

9  made to the present.  The holder of the Bac Home Loans Servicing Secured Claim who has elected

10  treatment under Section 1111(b)(2) of the Bankruptcy Code shall have no recourse against  Debtors.

11  In the event of a default under the Amended Bac Home Loans Servicing Election Note, such recourse

12  shall be limited to the Collateral to which such Liens are attached.

13        **4.1.7.  Class 7:  Bac Home Loans Servicing (3348 Palio Avenue, Las Vegas,**

14        **Nevada 89122) - Impaired.**

15        <u>Impairment and Voting.</u> Class 7 consists of the Bac Home Loans Servicing Claim

16  relating to 3348 Palio Avenue, Las Vegas, Nevada 89122. The Debtors estimate that Bac Home

17  Loans Servicing has a Claim in the amount of $233,333.00 that is secured in the approximate

18  amount of $126,000.00.  The holder of the Bac Home Loans Servicing Claim is impaired under the

19  Plan; consequently, the holder of the Bac Home Loans Servicing Claim is entitled to vote on the

20  Plan.

21        <u>Treatment.</u>      Unless the holder of the Bac Home Loans Servicing Claim elects

22  treatment under Section 1111(b)(2) of the Bankruptcy Code, in full and final satisfaction of its Claim,

23  the holder of the Allowed Bac Home Loans Servicing Secured Claim shall (i) receive an Amended

24  Bac Home Loans Servicing Note and Amended Bac Home Loans Servicing Deed of Trust in an

25  amount equal to $126,000 (the amount of the Allowed Secured Claim is determined on the

26  assumption that the value of such Claimant's interest in the Debtors' interest in the Collateral is equal

27  to $126,000) payable in equal monthly installments over the remaining 15 years bearing interest at

28  the rate of 3.9%, and as a condition to payment, Bac Home Loans Servicing, or its successors in

plan 073010

1    interest if applicable, shall execute and deliver to Debtors all such documentation which Debtors

2    deem necessary to effectuate a release of the applicable Liens against the Collateral of Debtors, and

3    (ii) receive an Allowed General Unsecured Claim for the amount due it in excess of $126,000, or

4    approximately $107,333.00.

5         However, if the holder of the Bac Home Loans Servicing Claim has elected the option

6    for treatment under Section 1111(b)(2) of the Bankruptcy Code in accordance with Bankruptcy Rule

7    3014, the holder of the Allowed Claim shall receive, in full and final satisfaction of its Claim, equal

8    monthly installments over a period of 30 years, deferred cash payments totaling at least the amount of

9    the Allowed Claim, with a value as of the Effective Date of at least the holder's interest in the estate's

10   interest in the Collateral securing such Claim ($126,000). By no later than the later of (a) the

11   Effective Date or (b) fifteen (15) days after the Claim becomes an Allowed Secured Claim, Debtors

12   shall execute and deliver to the holder of the Bac Home Loans Servicing Secured Claim an amended

13   non-recourse promissory note (the "Amended Bac Home Loans Servicing Election Note") evidencing

14   such payment terms and bearing a 4.57% interest rate.

15        If the holder of the Bac Home Loans Servicing Allowed Secured Claim has elected

16   such treatment under Section 1111(b)(2) it shall retain its Liens to secure repayment of the Amended

17   Bac Home Loans Servicing Election Note until such Amended Bac Home Loans Servicing Election

18   Note is fully paid or until the holder otherwise agrees. Upon satisfaction of the Amended Bac Home

19   Loans Servicing Election Note, the holder thereof shall promptly execute and deliver to Debtors all

20   such documentation which Debtors deem necessary to effectuate a release of the holder's Liens

21   against Collateral of Debtors. The Amended Bac Home Loans Servicing Election Note may be

22   prepaid by Debtors or on behalf of Debtors at any time without penalty; however, Debtors must pay

23   the difference between the Bac Home Loans Servicing Allowed Claim and the outstanding balance

24   remaining due under the Amended Bac Home Loans Servicing Election Note, plus the payments

25   made to the present. The holder of the Bac Home Loans Servicing Secured Claim who has elected

26   treatment under Section 1111(b)(2) of the Bankruptcy Code shall have no recourse against Debtors.

27   In the event of a default under the Amended Bac Home Loans Servicing Election Note, such recourse

28   shall be limited to the Collateral to which such Liens are attached.

plan 073010

### 4.1.8.  Class 8:  Bac Home Loans Servicing (Frisco Lane, Tupelo, MS) - Impaired.

<u>Impairment and Voting.</u> Class 8 consists of the Bac Home Loans Servicing Claim relating to Frisco Lane, Tupelo, Mississippi. The Debtors estimate that Bac Home Loans Servicing has a Claim in the amount of $41,242.00 that is secured in the approximate amount of $5,000.00. The holder of the Bac Home Loans Servicing Claim is impaired under the Plan; consequently, the holder of the Bac Home Loans Servicing Claim is entitled to vote on the Plan.

<u>Treatment.</u>     Unless the holder of the Bac Home Loans Servicing Claim elects treatment under Section 1111(b)(2) of the Bankruptcy Code, in full and final satisfaction of its Claim, the holder of the Allowed Bac Home Loans Servicing Secured Claim shall (i) receive an Amended Bac Home Loans Servicing Note and Amended Bac Home Loans Servicing Deed of Trust in an amount equal to $5,000 (the amount of the Allowed Secured Claim is determined on the assumption that the value of such Claimant's interest in the Debtors' interest in the Collateral is equal to $5,000) payable in equal monthly installments over the remaining 15 years bearing interest at the rate of 3.9%, and as a condition to payment, Bac Home Loans Servicing, or its successors in interest if applicable, shall execute and deliver to Debtors all such documentation which Debtors deem necessary to effectuate a release of the applicable Liens against the Collateral of Debtors, and (ii) receive an Allowed General Unsecured Claim for the amount due it in excess of $5,000, or approximately $36,242.00.

However, if the holder of the Bac Home Loans Servicing Claim has elected the option for treatment under Section 1111(b)(2) of the Bankruptcy Code in accordance with Bankruptcy Rule 3014, the holder of the Allowed Claim shall receive, in full and final satisfaction of its Claim, equal monthly installments over a period of 30 years, deferred cash payments totaling at least the amount of the Allowed Claim, with a value as of the Effective Date of at least the holder's interest in the estate's interest in the Collateral securing such Claim ($5,000). By no later than the later of (a) the Effective Date or (b) fifteen (15) days after the Claim becomes an Allowed Secured Claim, Debtors shall execute and deliver to the holder of the Bac Home Loans Servicing Secured Claim an amended non-recourse promissory note (the "Amended Bac Home Loans Servicing Election Note") evidencing

plan 073010

1    such payment terms and bearing a 4.57% interest rate.

2              If the holder of the Bac Home Loans Servicing Allowed Secured Claim has elected

3    such treatment under Section 1111(b)(2) it shall retain its Liens to secure repayment of the Amended

4    Bac Home Loans Servicing Election Note until such Amended Bac Home Loans Servicing Election

5    Note is fully paid or until the holder otherwise agrees.  Upon satisfaction of the Amended Bac Home

6    Loans Servicing Election Note, the holder thereof shall promptly execute and deliver to Debtors all

7    such documentation which Debtors deem necessary to effectuate a release of the holder's Liens

8    against Collateral of Debtors.  The Amended Bac Home Loans Servicing Election Note may be

9    prepaid by Debtors or on behalf of Debtors at any time without penalty; however, Debtors must pay

10   the difference between the Bac Home Loans Servicing Allowed Claim and the outstanding balance

11   remaining due under the Amended Bac Home Loans Servicing Election Note, plus the payments

12   made to the present.  The holder of the Bac Home Loans Servicing Secured Claim who has elected

13   treatment under Section 1111(b)(2) of the Bankruptcy Code shall have no recourse against Debtors.

14   In the event of a default under the Amended Bac Home Loans Servicing Election Note, such recourse

15   shall be limited to the Collateral to which such Liens are attached.

16        **4.1.9.  Class 9:  Bac Home Loans Servicing (8824 Martin Downs Place, Las**

17        **Vegas, Nevada 89131) - Impaired.**

18        Impairment and Voting. Class 9 consists of the Bac Home Loans Servicing Claim

19   relating to 8824 Martin Downs Place, Las Vegas, Nevada 89131. The Debtors estimate that Bac

20   Home Loans Servicing has a Claim in the amount of $257,198.00 that is secured in the approximate

21   amount of $153,000.00.  The holder of the Bac Home Loans Servicing Claim is impaired under the

22   Plan; consequently, the holder of the Bac Home Loans Servicing Claim is entitled to vote on the

23   Plan.

24        Treatment.      Unless the holder of the Bac Home Loans Servicing Claim elects

25   treatment under Section 1111(b)(2) of the Bankruptcy Code, in full and final satisfaction of its Claim,

26   the holder of the Allowed Bac Home Loans Servicing Secured Claim shall (i) receive an Amended

27   Bac Home Loans Servicing Note and Amended Bac Home Loans Servicing Deed of Trust in an

28   amount equal to $153,000 (the amount of the Allowed Secured Claim is determined on the

plan 073010

assumption that the value of such Claimant's interest in the Debtors' interest in the Collateral is equal to $153,000) payable in equal monthly installments over the remaining 15 years bearing interest at the rate of 3.9%, and as a condition to payment, Bac Home Loans Servicing, or its successors in interest if applicable, shall execute and deliver to Debtors all such documentation which Debtors deem necessary to effectuate a release of the applicable Liens against the Collateral of Debtors, and (ii) receive an Allowed General Unsecured Claim for the amount due it in excess of $153,000, or approximately $104,198.00.

However, if the holder of the Bac Home Loans Servicing Claim has elected the option for treatment under Section 1111(b)(2) of the Bankruptcy Code in accordance with Bankruptcy Rule 3014, the holder of the Allowed Claim shall receive, in full and final satisfaction of its Claim, equal monthly installments over a period of 30 years, deferred cash payments totaling at least the amount of the Allowed Claim, with a value as of the Effective Date of at least the holder's interest in the estate's interest in the Collateral securing such Claim ($153,000). By no later than the later of (a) the Effective Date or (b) fifteen (15) days after the Claim becomes an Allowed Secured Claim, Debtors shall execute and deliver to the holder of the Bac Home Loans Servicing Secured Claim an amended non-recourse promissory note (the "Amended Bac Home Loans Servicing Election Note") evidencing such payment terms and bearing a 4.57% interest rate.

If the holder of the Bac Home Loans Servicing Allowed Secured Claim has elected such treatment under Section 1111(b)(2) it shall retain its Liens to secure repayment of the Amended Bac Home Loans Servicing Election Note until such Amended Bac Home Loans Servicing Election Note is fully paid or until the holder otherwise agrees. Upon satisfaction of the Amended Bac Home Loans Servicing Election Note, the holder thereof shall promptly execute and deliver to Debtors all such documentation which Debtors deem necessary to effectuate a release of the holder's Liens against Collateral of Debtors. The Amended Bac Home Loans Servicing Election Note may be prepaid by Debtors or on behalf of Debtors at any time without penalty; however, Debtors must pay the difference between the Bac Home Loans Servicing Allowed Claim and the outstanding balance remaining due under the Amended Bac Home Loans Servicing Election Note, plus the payments made to the present. The holder of the Bac Home Loans Servicing Secured Claim who has elected

plan 073010

treatment under Section 1111(b)(2) of the Bankruptcy Code shall have no recourse against Debtors. In the event of a default under the Amended Bac Home Loans Servicing Election Note, such recourse shall be limited to the Collateral to which such Liens are attached.

### 4.1.10. Class 10:  Bac Home Loans Servicing (2606 S. Durango Drive, #187, Las Vegas, Nevada 89122) - Impaired.

Impairment and Voting. Class 10 consists of the Bac Home Loans Servicing Claim relating to 2606 S. Durango Drive, #187, Las Vegas, Nevada 89122. The Debtors estimate that Bac Home Loans Servicing has a Claim in the amount of $39,000.00 that is secured in the approximate amount of $67,363.00.  The holder of the Bac Home Loans Servicing Claim is impaired under the Plan; consequently, the holder of the Bac Home Loans Servicing Claim is entitled to vote on the Plan.

Treatment.    Unless the holder of the Bac Home Loans Servicing Claim elects treatment under Section 1111(b)(2) of the Bankruptcy Code, in full and final satisfaction of its Claim, the holder of the Allowed Bac Home Loans Servicing Secured Claim shall (i) receive an Amended Bac Home Loans Servicing Note and Amended Bac Home Loans Servicing Deed of Trust in an amount equal to $39,000 (the amount of the Allowed Secured Claim is determined on the assumption that the value of such Claimant's interest in the Debtors' interest in the Collateral is equal to $39,000) payable in equal monthly installments over the remaining 15 years bearing interest at the rate of 3.9%, and as a condition to payment, Bac Home Loans Servicing, or its successors in interest if applicable, shall execute and deliver to  Debtors all such documentation which  Debtors deem necessary to effectuate a release of the applicable Liens against the Collateral of  Debtors, and (ii) receive an Allowed General Unsecured Claim for the amount due it in excess of $39,000, or approximately $28,363.00.

However, if the holder of the Bac Home Loans Servicing has elected the option for treatment under Section 1111(b)(2) of the Bankruptcy Code in accordance with Bankruptcy Rule 3014, the holder of the Allowed Claim shall receive, in full and final satisfaction of its Claim, equal monthly installments over a period of 30 years, deferred cash payments totaling at least the amount of the Allowed Claim, with a value as of the Effective Date of at least the holder's interest in the estate's

24

interest in the Collateral securing such Claim ($39,000). By no later than the later of (a) the Effective Date or (b) fifteen (15) days after the Claim becomes an Allowed Secured Claim, Debtors shall execute and deliver to the holder of the Bac Home Loans Servicing Secured Claim an amended non-recourse promissory note (the "Amended Bac Home Loans Servicing Election Note") evidencing such payment terms and bearing a 4.57% interest rate.

If the holder of the Bac Home Loans Servicing Allowed Secured Claim has elected such treatment under Section 1111(b)(2) it shall retain its Liens to secure repayment of the Amended Bac Home Loans Servicing Election Note until such Amended Bac Home Loans Servicing Election Note is fully paid or until the holder otherwise agrees. Upon satisfaction of the Amended Bac Home Loans Servicing Election Note, the holder thereof shall promptly execute and deliver to Debtors all such documentation which Debtors deem necessary to effectuate a release of the holder's Liens against Collateral of Debtors. The Amended Bac Home Loans Servicing Election Note may be prepaid by Debtors or on behalf of Debtors at any time without penalty; however, Debtors must pay the difference between the Bac Home Loans Servicing Allowed Claim and the outstanding balance remaining due under the Amended Bac Home Loans Servicing Election Note, plus the payments made to the present. The holder of the Bac Home Loans Servicing Secured Claim who has elected treatment under Section 1111(b)(2) of the Bankruptcy Code shall have no recourse against Debtors. In the event of a default under the Amended Bac Home Loans Servicing Election Note, such recourse shall be limited to the Collateral to which such Liens are attached.

**4.1.11. Class 11: Chase (7918 Mainland Woods, San Antonio Texas) - Impaired.**

Impairment and Voting. Class 11 consists of the Chase Claim relating to 7918 Mainland Woods, San Antonio Texas. The Debtors estimate that Chase has a Claim in the amount of $133,717.00 that is secured in the approximate amount of $125,000.00. The holder of the Chase Claim is impaired under the Plan; consequently, the holder of the Chase Claim is entitled to vote on the Plan.

Treatment.    Unless the holder of the Chase Claim elects treatment under Section 1111(b)(2) of the Bankruptcy Code, in full and final satisfaction of its Claim, the holder of the Allowed Chase Claim shall (i) receive an Amended Chase Note and Amended Chase Deed of Trust

in an amount equal to $125,000 (the amount of the Allowed Secured Claim is determined on the assumption that the value of such Claimant's interest in the Debtors' interest in the Collateral is equal to $125,000) payable in equal monthly installments over the remaining 15 years bearing interest at the rate of 3.9%, and as a condition to payment, Chase, or its successors in interest if applicable, shall execute and deliver to Debtors all such documentation which Debtors deem necessary to effectuate a release of the applicable Liens against the Collateral of Debtors, and (ii) receive an Allowed General Unsecured Claim for the amount due it in excess of $125,000, or approximately $8,717.00.

However, if the holder of the Chase Claim elected the option for treatment under Section 1111(b)(2) of the Bankruptcy Code in accordance with Bankruptcy Rule 3014, the holder of the Allowed Claim shall receive, in full and final satisfaction of its Claim, equal monthly installments over a period of 30 years, deferred cash payments totaling at least the amount of the Allowed Claim, with a value as of the Effective Date of at least the holder's interest in the estate's interest in the Collateral securing such Claim ($125,000). By no later than the later of (a) the Effective Date or (b) fifteen (15) days after the Claim becomes an Allowed Secured Claim, Debtors shall execute and deliver to the holder of the Chase Secured Claim an amended non-recourse promissory note (the "Amended Chase Election Note") evidencing such payment terms and bearing a 4.57% interest rate.

If the holder of the Chase Allowed Secured Claim has elected such treatment under Section 1111(b)(2) it shall retain its Liens to secure repayment of the Amended Chase Election Note until such Amended Chase Election Note is fully paid or until the holder otherwise agrees. Upon satisfaction of the Amended Chase Election Note, the holder thereof shall promptly execute and deliver to Debtors all such documentation which Debtors deem necessary to effectuate a release of the holder's Liens against Collateral of Debtors. The Amended Chase Election Note may be prepaid by Debtors or on behalf of Debtors at any time without penalty; however, Debtors must pay the difference between the Chase Allowed Claim and the outstanding balance remaining due under the Amended Chase Election Note, plus the payments made to the present. The holder of the Chase Secured Claim who has elected treatment under Section 1111(b)(2) of the Bankruptcy Code shall have no recourse against Debtors. In the event of a default under the Amended Chase Election Note, such recourse shall be limited to the Collateral to which such Liens are attached.

plan 073010

1   **4.1.12. Class 12:  EMC Mortgage (1405 Vegas Valley Drive, #85, Las Vegas,**
2   **Nevada 89169) - Impaired.**

3        Impairment and Voting. Class 12 consists of the EMC Mortgage Claim relating to a
4   junior deed of trust recorded against 1405 Vegas Valley Drive, #85, Las Vegas, Nevada 89169.  The
5   Debtors estimate that EMC Mortgage has a claim of $26,480 which amount is wholly unsecured.
6   The holder of the EMC Mortgage Claim is impaired under the Plan; consequently, the holder of the
7   EMC Mortgage Claim is entitled to vote on the Plan.

8        Treatment.  The holder of the EMC Mortgage Claim shall be treated in accordance
9   with holders of General Unsecured Claims.

10   **4.1.13. Class 13:  EMC Mortgage (1405 Vegas Valley Drive, #347, Las Vegas,**
11   **Nevada 89169) - Impaired.**

12       Impairment and Voting. Class 13 consists of the EMC Mortgage Claim relating to a
13   junior deed of trust recorded against 1405 Vegas Valley Drive, #347, Las Vegas, Nevada 89169.
14   The Debtors estimate that EMC Mortgage has a claim of $26,480 which amount is wholly
15   unsecured.   The holder of the EMC Mortgage Claim is impaired under the Plan; consequently, the
16   holder of the EMC Mortgage Claim is entitled to vote on the Plan.

17       Treatment.  The holder of the EMC Mortgage Claim shall be treated in accordance
18   with holders of General Unsecured Claims.

19   **4.1.14. Class 14:  Flagstar Bank (3807 Aspen Creek Avenue, Las Vegas, Nevada**
20   **89031) - Impaired.**

21       Impairment and Voting. Class 14 consists of the Flagstar Bank Claim relating to 3807
22   Aspen Creek Avenue, Las Vegas, Nevada 89031. The Debtors estimate that Flagstar Bank has a
23   Claim in the amount of $224,800.00 that is secured in the approximate amount of $122,000.00.  The
24   holder of the Flagstar Bank Claim is impaired under the Plan; consequently, the holder of the
25   Flagstar Bank Claim is entitled to vote on the Plan.

26       Treatment.      Unless the holder of the Flagstar Bank Claim elects treatment under
27   Section 1111(b)(2) of the Bankruptcy Code, in full and final satisfaction of its Claim, the holder of
28   the Allowed Flagstar Bank Claim shall (i) receive an Amended Flagstar Bank Note and Amended

27

plan 073010

Flagstar Bank Deed of Trust in an amount equal to $122,000 (the amount of the Allowed Secured Claim is determined on the assumption that the value of such Claimant's interest in the Debtors' interest in the Collateral is equal to $122,000) payable in equal monthly installments over 15 years bearing interest at the rate of 3.9%, and as a condition to payment, Flagstar Bank, or its successors in interest if applicable, shall execute and deliver to Debtors all such documentation which Debtors deem necessary to effectuate a release of the applicable Liens against the Collateral of Debtors, and (ii) receive an Allowed General Unsecured Claim for the amount due it in excess of $122,000, or approximately $102,800.00.

However, if the holder of the Flagstar Bank Claim elected the option for treatment under Section 1111(b)(2) of the Bankruptcy Code in accordance with Bankruptcy Rule 3014, the holder of the Allowed Claim shall receive, in full and final satisfaction of its Claim, equal monthly installments over a period of 30 years, deferred cash payments totaling at least the amount of the Allowed Claim, with a value as of the Effective Date of at least the holder's interest in the estate's interest in the Collateral securing such Claim ($122,000). By no later than the later of (a) the Effective Date or (b) fifteen (15) days after the Claim becomes an Allowed Secured Claim, Debtors shall execute and deliver to the holder of the Flagstar Bank Secured Claim an amended non-recourse promissory note (the "Amended Flagstar Bank Election Note") evidencing such payment terms and bearing a 4.57% interest rate.

If the holder of the Flagstar Bank Allowed Secured Claim has elected such treatment under Section 1111(b)(2) it shall retain its Liens to secure repayment of the Amended Flagstar Bank Election Note until such Amended Flagstar Bank Election Note is fully paid or until the holder otherwise agrees. Upon satisfaction of the Amended Flagstar Bank Election Note, the holder thereof shall promptly execute and deliver to Debtors all such documentation which Debtors deem necessary to effectuate a release of the holder's Liens against Collateral of Debtors. The Amended Flagstar Bank Election Note may be prepaid by Debtors or on behalf of Debtors at any time without penalty; however, Debtors must pay the difference between the Flagstar Bank Allowed Claim and the outstanding balance remaining due under the Amended Flagstar Bank Election Note, plus the payments made to the present. The holder of the Flagstar Bank Secured Claim who has elected

plan 073010

treatment under Section 1111(b)(2) of the Bankruptcy Code shall have no recourse against Debtors. In the event of a default under the Amended Flagstar Bank Election Note, such recourse shall be limited to the Collateral to which such Liens are attached.

### 4.1.15. Class 15:  Flagstar Bank (3334 Palio Avenue, Las Vegas, Nevada 89031) - Impaired.

<u>Impairment and Voting.</u> Class 15 consists of the Flagstar Bank Claim relating to 3334 Palio Avenue, Las Vegas, Nevada 89031. The Debtors estimate that Flagstar Bank has a Claim in the amount of $223,300.00 that is secured in the approximate amount of $132,000.00.  The holder of the Flagstar Bank Claim is impaired under the Plan; consequently, the holder of the Flagstar Bank Claim is entitled to vote on the Plan.

<u>Treatment.</u>      Unless the holder of the Flagstar Bank Claim elects treatment under Section 1111(b)(2) of the Bankruptcy Code, in full and final satisfaction of its Claim, the holder of the Allowed Flagstar Bank Claim shall (i) receive an Amended Flagstar Bank Note and Amended Flagstar Bank  Deed of Trust in an amount equal to $132,000 (the amount of the Allowed Secured Claim is determined on the assumption that the value of such Claimant's interest in the Debtors' interest in the Collateral is equal to $132,000) payable in equal monthly installments over 15 years bearing interest at the rate of 3.9%, and as a condition to payment, Flagstar Bank, or its successors in interest if applicable, shall execute and deliver to Debtors all such documentation which Debtors deem necessary to effectuate a release of the applicable Liens against the Collateral of Debtors, and (ii) receive an Allowed General Unsecured Claim for the amount due it in excess of $132,000, or approximately $111,300.00.

However, if the holder of the Flagstar Bank Claim elected the option for treatment under Section 1111(b)(2) of the Bankruptcy Code in accordance with Bankruptcy Rule 3014, the holder of the Allowed Claim shall receive, in full and final satisfaction of its Claim, equal monthly installments over a period of 30 years, deferred cash payments totaling at least the amount of the Allowed Claim, with a value as of the Effective Date of at least the holder's interest in the estate's interest in the Collateral securing such Claim ($132,000). By no later than the later of (a) the Effective Date or (b) fifteen (15) days after the Claim becomes an Allowed Secured Claim,  Debtors

plan 073010

1   shall execute and deliver to the holder of the Flagstar Bank Secured Claim an amended non-recourse

2   promissory note (the "Amended Flagstar Bank Election Note") evidencing such payment terms and

3   bearing a 4.57% interest rate.

4           If the holder of the Flagstar Bank Allowed Secured Claim has elected such treatment

5   under Section 1111(b)(2) it shall retain its Liens to secure repayment of the Amended Flagstar Bank

6   Election Note until such Amended Flagstar Bank Election Note is fully paid or until the holder

7   otherwise agrees.  Upon satisfaction of the Amended Flagstar Bank Election Note, the holder thereof

8   shall promptly execute and deliver to Debtors all such documentation which Debtors deem necessary

9   to effectuate a release of the holder's Liens against Collateral of Debtors.  The Amended Flagstar

10  Bank Election Note may be prepaid by Debtors or on behalf of Debtors at any time without penalty;

11  however, Debtors must pay the difference between the Flagstar Bank Allowed Claim and the

12  outstanding balance remaining due under the Amended Flagstar Bank Election Note, plus the

13  payments made to the present.  The holder of the Flagstar Bank Secured Claim who has elected

14  treatment under Section 1111(b)(2) of the Bankruptcy Code shall have no recourse against  Debtors.

15  In the event of a default under the Amended Flagstar Bank Election Note, such recourse shall be

16  limited to the Collateral to which such Liens are attached.

17          **4.1.16. Class 16:  Flagstar Bank (5301 Sly Fox Court, Las Vegas, Nevada) -**

18          **Impaired.**

19          Impairment and Voting. Class 16 consists of the Flagstar Bank Claim relating to 5301

20  Sly Fox Court, Las Vegas, Nevada. The Debtors estimate that Flagstar Bank has a Claim in the

21  amount of $224,000.00 that is secured in the approximate amount of $132,000.00.  The holder of the

22  Flagstar Bank Claim is impaired under the Plan; consequently, the holder of the Flagstar Bank Claim

23  is entitled to vote on the Plan.

24          Treatment.      Unless the holder of the Flagstar Bank Claim elects treatment under

25  Section 1111(b)(2) of the Bankruptcy Code, in full and final satisfaction of its Claim, the holder of

26  the Allowed Flagstar Bank Claim shall (i) receive an Amended Flagstar Bank Note and Amended

27  Flagstar Bank  Deed of Trust in an amount equal to $132,000 (the amount of the Allowed Secured

28  Claim is determined on the assumption that the value of such Claimant's interest in the Debtors'

plan 073010

interest in the Collateral is equal to $132,000) payable in equal monthly installments over 15 years bearing interest at the rate of 3.9%, and as a condition to payment, Flagstar Bank, or its successors in interest if applicable, shall execute and deliver to Debtors all such documentation which Debtors deem necessary to effectuate a release of the applicable Liens against the Collateral of Debtors, and (ii) receive an Allowed General Unsecured Claim for the amount due it in excess of $132,000, or approximately $92,000.00.

However, if the holder of the Flagstar Bank Claim elected the option for treatment under Section 1111(b)(2) of the Bankruptcy Code in accordance with Bankruptcy Rule 3014, the holder of the Allowed Claim shall receive, in full and final satisfaction of its Claim, equal monthly installments over a period of 30 years, deferred cash payments totaling at least the amount of the Allowed Claim, with a value as of the Effective Date of at least the holder's interest in the estate's interest in the Collateral securing such Claim ($132,000). By no later than the later of (a) the Effective Date or (b) fifteen (15) days after the Claim becomes an Allowed Secured Claim, Debtors shall execute and deliver to the holder of the Flagstar Bank Secured Claim an amended non-recourse promissory note (the "Amended Flagstar Bank Election Note") evidencing such payment terms and bearing a 4.57% interest rate.

If the holder of the Flagstar Bank Allowed Secured Claim has elected such treatment under Section 1111(b)(2) it shall retain its Liens to secure repayment of the Amended Flagstar Bank Election Note until such Amended Flagstar Bank Election Note is fully paid or until the holder otherwise agrees. Upon satisfaction of the Amended Flagstar Bank Election Note, the holder thereof shall promptly execute and deliver to Debtors all such documentation which Debtors deem necessary to effectuate a release of the holder's Liens against Collateral of Debtors. The Amended Flagstar Bank Election Note may be prepaid by Debtors or on behalf of Debtors at any time without penalty; however, Debtors must pay the difference between the Flagstar Bank Allowed Claim and the outstanding balance remaining due under the Amended Flagstar Bank Election Note, plus the payments made to the present. The holder of the Flagstar Bank Secured Claim who has elected treatment under Section 1111(b)(2) of the Bankruptcy Code shall have no recourse against Debtors. In the event of a default under the Amended Flagstar Bank Election Note, such recourse shall be

plan 073010

limited to the Collateral to which such Liens are attached.

**4.1.17. Class 17:  Green Tree (7417 Vintage Hills, Austin, Texas) - Impaired.**

Impairment and Voting. Class 17 consists of the Green Tree Claim relating to a junior deed of trust recorded against 7417 Vintage Hills, Austin, Texas.  The Debtors estimate that Green Tree has a claim of $20,206 which amount is wholly unsecured.   The holder of the Green Tree Claim is impaired under the Plan; consequently, the holder of the Green Tree Claim is entitled to vote on the Plan.

Treatment.  The holder of the Green Tree Claim shall be treated in accordance with holders of General Unsecured Claims.

**4.1.18. Class 18:  Green Tree (7415 Vintage Hills, Austin, Texas) - Impaired.**

Impairment and Voting. Class 18 consists of the Green Tree Claim relating to a junior deed of trust recorded against 7415 Vintage Hills, Austin, Texas.  The Debtors estimate that Green Tree has a claim of $20,206 which amount is wholly unsecured.   The holder of the Green Tree Claim is impaired under the Plan; consequently, the holder of the Green Tree Claim is entitled to vote on the Plan.

Treatment.  The holder of the Green Tree Claim shall be treated in accordance with holders of General Unsecured Claims.

**4.1.19. Class 19:  Interval Servicing (HOA Lien Timeshare - the Royal Caribbean- Interval 19) - Impaired.**

Impairment and Voting. Class 19 consists of the Interval Servicing Claim relating to a HOA lien on a timeshare for the Royal Caribbean- Interval 19.  The holder of the Interval Servicing Claim is impaired under the Plan; consequently, the holder of the Interval Servicing Claim is entitled to vote on the Plan.

Treatment.  The holder of the Interval Servicing Claim shall receive any and all of its collateral on the timeshare in full and complete satisfaction of its claim.

**4.1.20. Class 20:  Interval Servicing (HOA Lien Timeshare - the Royal Caribbean- Interval 20) - Impaired.**

Impairment and Voting. Class 20 consists of the Interval Servicing Claim relating to a

plan 073010

1  HOA lien on a timeshare for the Royal Caribbean- Interval 20.  The holder of the Interval Servicing

2  Claim is impaired under the Plan; consequently, the holder of the Interval Servicing Claim is entitled

3  to vote on the Plan.

4         Treatment.  The holder of the Interval Servicing Claim shall receive any and all of its

5  collateral on the timeshare in full and complete satisfaction of its claim.

6         **4.1.21. Class 21:  M&T Bank (241 Kilpatrick Street, Baldwyn, Mississippi 38824)**

7         **- Impaired.**

8         Impairment and Voting.  Class 21 consists of the M&T Bank Claim relating to 241

9  Kilpatrick Street, Baldwyn, Mississippi 38824. The Debtors estimate that M&T Bank has a Claim in

10  the amount of $415,704.00 that is secured in the approximate amount of $350,000.00.  The holder of

11  the M&T Bank Claim is impaired under the Plan; consequently, the holder of the M&T Bank Claim

12  is entitled to vote on the Plan.

13         Treatment.    Unless the holder of the M&T Bank Claim elects treatment under

14  Section 1111(b)(2) of the Bankruptcy Code, in full and final satisfaction of its Claim, the holder of

15  the Allowed M&T Bank Claim shall (i) receive an Amended M&T Bank Note and Amended M&T

16  Bank  Deed of Trust in an amount equal to $350,000 (the amount of the Allowed Secured Claim is

17  determined on the assumption that the value of such Claimant's interest in the Debtors' interest in the

18  Collateral is equal to $350,000) payable in equal monthly installments over 15 years bearing interest

19  at the rate of 3.9%, and as a condition to payment, M&T Bank, or its successors in interest if

20  applicable, shall execute and deliver to  Debtors all such documentation which  Debtors deem

21  necessary to effectuate a release of the applicable Liens against the Collateral of Debtors, and (ii)

22  receive an Allowed General Unsecured Claim for the amount due it in excess of $350,000, or

23  approximately $65,704.00.

24         However, if the holder of the M&T Bank Claim elected the option for treatment under

25  Section 1111(b)(2) of the Bankruptcy Code in accordance with Bankruptcy Rule 3014, the holder of

26  the Allowed Claim shall receive, in full and final satisfaction of its Claim, equal monthly installments

27  over a period of 30 years, deferred cash payments totaling at least the amount of the Allowed Claim,

28  with a value as of the Effective Date of at least the holder's interest in the estate's interest in the

plan 073010

Collateral securing such Claim ($350,000). By no later than the later of (a) the Effective Date or (b) fifteen (15) days after the Claim becomes an Allowed Secured Claim, Debtors shall execute and deliver to the holder of the M&T Bank Secured Claim an amended non-recourse promissory note (the "Amended M&T Bank Election Note") evidencing such payment terms and bearing a 4.57% interest rate.

If the holder of the M&T Bank Allowed Secured Claim has elected such treatment under Section 1111(b)(2) it shall retain its Liens to secure repayment of the Amended M&T Bank Election Note until such Amended M&T Bank Election Note is fully paid or until the holder otherwise agrees. Upon satisfaction of the Amended M&T Bank Election Note, the holder thereof shall promptly execute and deliver to Debtors all such documentation which Debtors deem necessary to effectuate a release of the holder's Liens against Collateral of Debtors. The Amended M&T Bank Election Note may be prepaid by Debtors or on behalf of Debtors at any time without penalty; however, Debtors must pay the difference between the M&T Bank Allowed Claim and the outstanding balance remaining due under the Amended M&T Bank Election Note, plus the payments made to the present. The holder of the M&T Bank Secured Claim who has elected treatment under Section 1111(b)(2) of the Bankruptcy Code shall have no recourse against Debtors. In the event of a default under the Amended M&T Bank Election Note, such recourse shall be limited to the Collateral to which such Liens are attached.

**4.1.22. Class 22: NCB (1414 Oliver Avenue, San Diego, California) - Unimpaired.**

Impairment and Voting. Class 22 consists of the NCB Claim relating to 1414 Oliver Avenue, San Diego, California, the Debtors' primary residence. The Debtors estimate that NCB Bank has a Claim in the amount of $200,192.00 that is secured in the approximate amount of $550,000.00. The holder of the NCB Claim is not impaired under the Plan; consequently, the holder of the NCB Claim is not entitled to vote on the Plan.

Treatment. The holder of the NCB Claim shall continue to receive payments under the applicable promissory note and deed of trust.

**4.1.23. Class 23: Nevada Federal Credit Union (4075 N. Rancho Drive, Las Vegas, Nevada) - Impaired.**

plan 073010

1          Impairment and Voting. Class 23 consists of the Nevada Federal Credit Union Claim

2    relating to 4075 N. Rancho Drive, Las Vegas, Nevada. The Debtors estimate that Nevada Federal

3    Credit Union has a Claim in the amount of $1,379,715.00 that is fully secured.  The holder of the

4    Nevada Federal Credit Union is impaired under the Plan; consequently, the holder of the Nevada

5    Federal Credit Union entitled to vote on the Plan.

6          Treatment.        In full and final satisfaction of its Claim, the holder of the Allowed

7    Nevada Federal Credit Union Claim shall (i) receive an Amended Nevada Federal Credit Union Note

8    and Amended Nevada Federal Credit Union Deed of Trust in an amount equal to $1,379,715 (the

9    amount of the Allowed Secured Claim is determined on the assumption that the value of such

10   Claimant's interest in the Debtors' interest in the Collateral is equal to $1,379,715) payable in interest

11   only at the rate of 5% per annum and equal monthly installments over a period of 30 years, deferred

12   cash payments paying $1,379,715 plus interest at the rate of 5.5%.

13          **4.1.24. Class 24:  Nevada Federal Credit Union (4145 N. Rancho Drive, Las**

14          **Vegas & 4075 North Rancho Drive, Las Vegas, Nevada) - Impaired.**

15          Impairment and Voting. Class 24 consists of the Nevada Federal Credit Union Claim

16   relating to a junior deed of trust recorded against 4145 N. Rancho Drive, Las Vegas & 4075 North

17   Rancho Drive, Las Vegas, Nevada.  The Debtors estimate that Nevada Federal Credit Union has a

18   claim of $180,000 which may be unsecured.   The holder of the Nevada Federal Credit Union Claim

19   is impaired under the Plan; consequently, the holder of the Nevada Federal Credit Union Claim is

20   entitled to vote on the Plan.

21          Treatment.  In full and final satisfaction of its Claim, the holder of the Allowed

22   Nevada Federal Credit Union Claim shall (i) receive an Amended Nevada Federal Credit Union

23   Note and Amended Nevada Federal Credit Union Deed of Trust in an amount equal to $1,379,715

24   (the amount of the Allowed Secured Claim is determined on the assumption that the value of such

25   Claimant's interest in the Debtors' interest in the Collateral is equal to $1,379,715) payable in

26   interest only at the rate of 5% per annum and equal monthly installments over a period of 30 years,

27   deferred cash payments paying $1,379,715 plus interest at the rate of 5.5%.

28          **4.1.25. Class 25:  Nevada Federal Credit Union (4145 N. Rancho Dr., Las Vegas,**

plan 073010

1  **Nevada and 4075 N. Rancho Drive, Las Vegas, Nevada) - Impaired.**

2  <u>Impairment and Voting.</u> Class 25 consists of the Nevada Federal Credit Union Claim

3  relating to 4145 N. Rancho Dr., Las Vegas, Nevada and 4075 N. Rancho Drive, Las Vegas, Nevada.

4  The Debtors estimate that Nevada Federal Credit Union has a Claim in the amount of $1,625,893.00

5  which may be fully secured. The holder of the Nevada Federal Credit Union Claim is impaired

6  under the Plan; consequently, the holder of the Nevada Federal Credit Union Claim is entitled to

7  vote on the Plan.

8  <u>Treatment.</u>    In full and final satisfaction of its Claim, the holder of the Allowed

9  Nevada Federal Credit Union Claim shall (i) receive an Amended Nevada Federal Credit Union Note

10  and Amended Nevada Federal Credit Union Deed of Trust in an amount equal to $1,379,715 (the

11  amount of the Allowed Secured Claim is determined on the assumption that the value of such

12  Claimant's interest in the Debtors' interest in the Collateral is equal to $1,379,715) payable in interest

13  only at the rate of 5% per annum and equal monthly installments over a period of 30 years, deferred

14  cash payments paying $1,379,715 plus interest at the rate of 5.5%.

15  **4.1.26. Class 26:  Onewest Bank (1405 Vegas Valley Drive, #347, Las Vegas,**

16  **Nevada 89169) - Impaired.**

17  <u>Impairment and Voting.</u> Class 26 consists of the Onewest Bank Claim relating to

18  1405 Vegas Valley Drive, #347, Las Vegas, Nevada 89169. The Debtors estimate that Onewest

19  Bank has a Claim in the amount of $57,803.00 that is secured in the approximate amount of

20  $23,000.00. The holder of the Onewest Bank Claim is impaired under the Plan; consequently, the

21  holder of the Onewest Bank Claim is entitled to vote on the Plan.

22  <u>Treatment.</u>    Unless the holder of the Onewest Bank Claim elects treatment under

23  Section 1111(b)(2) of the Bankruptcy Code, in full and final satisfaction of its Claim, the holder of

24  the Allowed Onewest Bank Claim shall (i) receive an Amended Onewest Bank Note and Amended

25  Onewest Bank Deed of Trust in an amount equal to $23,000.000 (the amount of the Allowed Secured

26  Claim is determined on the assumption that the value of such Claimant's interest in the Debtors'

27  interest in the Collateral is equal to $23,000) payable in equal monthly installments over 15 years

28  bearing interest at the rate of 3.9%, and as a condition to payment, Onewest Bank, or its successors in

plan 073010

1    interest if applicable, shall execute and deliver to Debtors all such documentation which Debtors

2    deem necessary to effectuate a release of the applicable Liens against the Collateral of Debtors, and

3    (ii) receive an Allowed General Unsecured Claim for the amount due it in excess of $23,00,000, or

4    approximately $34,803.00.

5           However, if the holder of the Onewest Bank Claim elected the option for treatment

6    under Section 1111(b)(2) of the Bankruptcy Code in accordance with Bankruptcy Rule 3014, the

7    holder of the Allowed Claim shall receive, in full and final satisfaction of its Claim, equal monthly

8    installments over a period of 30 years, deferred cash payments totaling at least the amount of the

9    Allowed Claim, with a value as of the Effective Date of at least the holder's interest in the estate's

10   interest in the Collateral securing such Claim ($23,000). By no later than the later of (a) the Effective

11   Date or (b) fifteen (15) days after the Claim becomes an Allowed Secured Claim, Debtors shall

12   execute and deliver to the holder of the Onewest Bank Secured Claim an amended non-recourse

13   promissory note (the "Amended Onewest Bank Election Note") evidencing such payment terms and

14   bearing a 4.57% interest rate.

15          If the holder of the Onewest Bank Allowed Secured Claim has elected such treatment

16   under Section 1111(b)(2) it shall retain its Liens to secure repayment of the Amended Onewest Bank

17   Election Note until such Amended Onewest Bank Election Note is fully paid or until the holder

18   otherwise agrees. Upon satisfaction of the Amended Onewest Bank Election Note, the holder thereof

19   shall promptly execute and deliver to Debtors all such documentation which Debtors deem necessary

20   to effectuate a release of the holder's Liens against Collateral of Debtors. The Amended Onewest

21   Bank Election Note may be prepaid by Debtors or on behalf of Debtors at any time without penalty;

22   however, Debtors must pay the difference between the Onewest Bank Allowed Claim and the

23   outstanding balance remaining due under the Amended Onewest Bank Election Note, plus the

24   payments made to the present. The holder of the Onewest Bank Secured Claim who has elected

25   treatment under Section 1111(b)(2) of the Bankruptcy Code shall have no recourse against Debtors.

26   In the event of a default under the Amended Onewest Bank Election Note, such recourse shall be

27   limited to the Collateral to which such Liens are attached.

28           **4.1.27. Class 27: Onewest Bank (1405 Vegas Valley Drive, #85, Las Vegas,**

plan 073010

**Nevada 89169) - Impaired.**

Impairment and Voting. Class 27 consists of the Onewest Bank Claim relating to 1405 Vegas Valley Drive, #85, Las Vegas, Nevada 89169. The Debtors estimate that Onewest Bank has a Claim in the amount of $57,800.00 that is secured in the approximate amount of $23,000.00. The holder of the Onewest Bank Claim is impaired under the Plan; consequently, the holder of the Onewest Bank Claim is entitled to vote on the Plan.

Treatment.    Unless the holder of the Onewest Bank Claim elects treatment under Section 1111(b)(2) of the Bankruptcy Code, in full and final satisfaction of its Claim, the holder of the Allowed Onewest Bank Claim shall (i) receive an Amended Onewest Bank Note and Amended Onewest Bank Deed of Trust in an amount equal to $23,000.000 (the amount of the Allowed Secured Claim is determined on the assumption that the value of such Claimant's interest in the Debtors' interest in the Collateral is equal to $23,000) payable in equal monthly installments over 15 years bearing interest at the rate of 3.9%, and as a condition to payment, Onewest Bank, or its successors in interest if applicable, shall execute and deliver to Debtors all such documentation which Debtors deem necessary to effectuate a release of the applicable Liens against the Collateral of Debtors, and (ii) receive an Allowed General Unsecured Claim for the amount due it in excess of $23,00,000, or approximately $34,800.00.

However, if the holder of the Onewest Bank Claim elected the option for treatment under Section 1111(b)(2) of the Bankruptcy Code in accordance with Bankruptcy Rule 3014, the holder of the Allowed Claim shall receive, in full and final satisfaction of its Claim, equal monthly installments over a period of 30 years, deferred cash payments totaling at least the amount of the Allowed Claim, with a value as of the Effective Date of at least the holder's interest in the estate's interest in the Collateral securing such Claim ($23,000). By no later than the later of (a) the Effective Date or (b) fifteen (15) days after the Claim becomes an Allowed Secured Claim, Debtors shall execute and deliver to the holder of the Onewest Bank Secured Claim an amended non-recourse promissory note (the "Amended Onewest Bank Election Note") evidencing such payment terms and bearing a 4.57% interest rate.

If the holder of the Onewest Bank Allowed Secured Claim has elected such treatment

38

1  under Section 1111(b)(2) it shall retain its Liens to secure repayment of the Amended Onewest Bank

2  Election Note until such Amended Onewest Bank Election Note is fully paid or until the holder

3  otherwise agrees.  Upon satisfaction of the Amended Onewest Bank Election Note, the holder thereof

4  shall promptly execute and deliver to Debtors all such documentation which Debtors deem necessary

5  to effectuate a release of the holder's Liens against Collateral of Debtors.  The Amended Onewest

6  Bank Election Note may be prepaid by Debtors or on behalf of Debtors at any time without penalty;

7  however, Debtors must pay the difference between the Onewest Bank Allowed Claim and the

8  outstanding balance remaining due under the Amended Onewest Bank Election Note, plus the

9  payments made to the present.  The holder of the Onewest Bank Secured Claim who has elected

10 treatment under Section 1111(b)(2) of the Bankruptcy Code shall have no recourse against  Debtors.

11 In the event of a default under the Amended Onewest Bank Election Note, such recourse shall be

12 limited to the Collateral to which such Liens are attached.

13          **4.1.28. Class 28:  PNC Mortgage (1414 Oliver Avenue, San Diego, California) -**

14          **Unimpaired.**

15          Impairment and Voting. Class 29 consists of the PNC Mortgage Claim relating to the

16 senior deed of trust on 1414 Oliver Avenue, San Diego, California, the Debtors' primary residence.

17 The Debtors estimate that PNC Mortgage has a Claim in the amount of $259,240.00 that is secured

18 in the approximate amount of $550,000.00.  The holder of the PNC Mortgage Claim is not impaired

19 under the Plan; consequently, the holder of the PNC Mortgage Claim is not entitled to vote on the

20 Plan.

21          Treatment.        The holder of the PNC Mortgage Claim shall continue to receive

22 payments under the applicable promissory note and deed of trust.

23          **4.1.29. Class 29:  Wells Fargo Bank NV (4380 Sandy River Drive, #35, Las Vegas,**

24          **Nevada) - Impaired.**

25          Impairment and Voting. Class 29 consists of the Wells Fargo Bank Claim relating to

26 4380 Sandy River Drive, #35, Las Vegas, Nevada. The Debtors estimate that Wells Fargo Bank has

27 a Claim in the amount of $76,157.00 that is secured in the approximate amount of $50,000.00.  The

28 holder of the Wells Fargo Bank Claim is impaired under the Plan; consequently, the holder of the

plan 073010

1  Wells Fargo Bank Claim is entitled to vote on the Plan.

2       <u>Treatment</u>.    Unless the holder of the Wells Fargo Bank Claim elects treatment

3  under Section 1111(b)(2) of the Bankruptcy Code, in full and final satisfaction of its Claim, the

4  holder of the Allowed Wells Fargo Bank Claim shall (i) receive an Amended Wells Fargo Bank Note

5  and Amended Wells Fargo Bank Deed of Trust in an amount equal to $50,000.000 (the amount of the

6  Allowed Secured Claim is determined on the assumption that the value of such Claimant's interest in

7  the Debtors' interest in the Collateral is equal to $50,000) payable in equal monthly installments over

8  15 years bearing interest at the rate of 3.9%, and as a condition to payment, Wells Fargo Bank, or its

9  successors in interest if applicable, shall execute and deliver to  Debtors all such documentation

10  which  Debtors deem necessary to effectuate a release of the applicable Liens against the Collateral

11  of  Debtors, and (ii) receive an Allowed General Unsecured Claim for the amount due it in excess of

12  $50,00,000, or approximately $26,157.00.

13       However, if the holder of the Wells Fargo Bank Claim elected the option for treatment

14  under Section 1111(b)(2) of the Bankruptcy Code in accordance with Bankruptcy Rule 3014, the

15  holder of the Allowed Claim shall receive, in full and final satisfaction of its Claim, equal monthly

16  installments over a period of 30 years, deferred cash payments totaling at least the amount of the

17  Allowed Claim, with a value as of the Effective Date of at least the holder's interest in the estate's

18  interest in the Collateral securing such Claim ($50,000). By no later than the later of (a) the Effective

19  Date or (b) fifteen (15) days after the Claim becomes an Allowed Secured Claim, Debtors shall

20  execute and deliver to the holder of the Wells Fargo Bank Secured Claim an amended non-recourse

21  promissory note (the "Amended Wells Fargo Bank Election Note") evidencing such payment terms

22  and bearing a 4.57% interest rate.

23       If the holder of the Wells Fargo Bank Allowed Secured Claim has elected such

24  treatment under Section 1111(b)(2) it shall retain its Liens to secure repayment of the Amended

25  Wells Fargo Bank Election Note until such Amended Wells Fargo Bank Election Note is fully paid or

26  until the holder otherwise agrees.  Upon satisfaction of the Amended Wells Fargo Bank Election

27  Note, the holder thereof shall promptly execute and deliver to Debtors all such documentation which

28  Debtors deem necessary to effectuate a release of the holder's Liens against Collateral of  Debtors.

plan 073010

The Amended Wells Fargo Bank Election Note may be prepaid by Debtors or on behalf of Debtors at any time without penalty; however, Debtors must pay the difference between the Wells Fargo Bank Allowed Claim and the outstanding balance remaining due under the Amended Wells Fargo Bank Election Note, plus the payments made to the present. The holder of the Wells Fargo Bank Secured Claim who has elected treatment under Section 1111(b)(2) of the Bankruptcy Code shall have no recourse against Debtors. In the event of a default under the Amended Wells Fargo Bank Election Note, such recourse shall be limited to the Collateral to which such Liens are attached.

### 4.1.30. Class 30: Wells Fargo Hm Mortgage (2609 W. French, San Antonio, Texas) - Impaired.

Impairment and Voting. Class 31 consists of the Wells Fargo Hm Mortgage Claim relating to 2609 W. French, San Antonio, Texas. The Debtors estimate that the Wells Fargo Hm Mortgage has a Claim in the amount of $64,520.00 that is secured in the approximate amount of $60,000.00. The holder of the Wells Fargo Hm Mortgage Claim is impaired under the Plan; consequently, the holder of the Wells Fargo Hm Mortgage Claim is entitled to vote on the Plan.

Treatment.    Unless the holder of the Wells Fargo Hm Mortgage Claim elects treatment under Section 1111(b)(2) of the Bankruptcy Code, in full and final satisfaction of its Claim, the holder of the Allowed Wells Fargo Hm Mortgage Claim shall (i) receive an Amended Wells Fargo Hm Mortgage Note and Amended Wells Fargo Hm Mortgage Deed of Trust in an amount equal to $60,000.000 (the amount of the Allowed Secured Claim is determined on the assumption that the value of such Claimant's interest in the Debtors' interest in the Collateral is equal to $60,000) payable in equal monthly installments over 15 years bearing interest at the rate of 3.9%, and as a condition to payment, Wells Fargo Hm Mortgage, or its successors in interest if applicable, shall execute and deliver to Debtors all such documentation which Debtors deem necessary to effectuate a release of the applicable Liens against the Collateral of Debtors, and (ii) receive an Allowed General Unsecured Claim for the amount due it in excess of $60,00,000, or approximately $4,520.00.

However, if the holder of the Wells Fargo Hm Mortgage Claim elected the option for treatment under Section 1111(b)(2) of the Bankruptcy Code in accordance with Bankruptcy Rule 3014, the holder of the Allowed Claim shall receive, in full and final satisfaction of its Claim, equal

monthly installments over a period of 30 years, deferred cash payments totaling at least the amount of the Allowed Claim, with a value as of the Effective Date of at least the holder's interest in the estate's interest in the Collateral securing such Claim ($50,000). By no later than the later of (a) the Effective Date or (b) fifteen (15) days after the Claim becomes an Allowed Secured Claim, Debtors shall execute and deliver to the holder of the Wells Fargo Hm Mortgage Secured Claim an amended non-recourse promissory note (the "Amended Wells Fargo Hm Mortgage Election Note") evidencing such payment terms and bearing a 4.57% interest rate.

   If the holder of the Wells Fargo Hm Mortgage Allowed Secured Claim has elected such treatment under Section 1111(b)(2) it shall retain its Liens to secure repayment of the Amended Wells Fargo Hm Mortgage Election Note until such Amended Wells Fargo Hm Mortgage Election Note is fully paid or until the holder otherwise agrees.  Upon satisfaction of the Amended Wells Fargo Hm Mortgage Election Note, the holder thereof shall promptly execute and deliver to Debtors all such documentation which Debtors deem necessary to effectuate a release of the holder's Liens against Collateral of Debtors.  The Amended Wells Fargo Hm Mortgage Election Note may be prepaid by Debtors or on behalf of Debtors at any time without penalty; however, Debtors must pay the difference between the Wells Fargo Hm Mortgage Allowed Claim and the outstanding balance remaining due under the Amended Wells Fargo Hm Mortgage Election Note, plus the payments made to the present.  The holder of the Wells Fargo Hm Mortgage Secured Claim who has elected treatment under Section 1111(b)(2) of the Bankruptcy Code shall have no recourse against Debtors. In the event of a default under the Amended Wells Fargo Hm Mortgage Election Note, such recourse shall be limited to the Collateral to which such Liens are attached.

   **4.1.31. Class 31:  Wells Fargo Hm Mortgage (2613 W. French, San Antonio, Texas) - Impaired.**

   <u>Impairment and Voting.</u> Class 32 consists of the Wells Fargo Hm Mortgage Claim relating to 2613 W. French, San Antonio, Texas. The Debtors estimate that the Wells Fargo Hm Mortgage has a Claim in the amount of $60,744.00 that is secured in the approximate amount of $60,000.00.  The holder of the Wells Fargo Hm Mortgage Claim is impaired under the Plan; consequently, the holder of the Wells Fargo Hm Mortgage Claim is entitled to vote on the Plan.

plan 073010

1        <u>Treatment</u>.    Unless the holder of the Wells Fargo Hm Mortgage Claim elects

2    treatment under Section 1111(b)(2) of the Bankruptcy Code, in full and final satisfaction of its Claim,

3    the holder of the Allowed Wells Fargo Hm Mortgage Claim shall (i) receive an Amended Wells

4    Fargo Hm Mortgage Note and Amended Wells Fargo Hm Mortgage Deed of Trust in an amount

5    equal to $60,000.000 (the amount of the Allowed Secured Claim is determined on the assumption

6    that the value of such Claimant's interest in the Debtors' interest in the Collateral is equal to $60,000)

7    payable in equal monthly installments over 15 years bearing interest at the rate of 3.9%, and as a

8    condition to payment, Wells Fargo Hm Mortgage, or its successors in interest if applicable, shall

9    execute and deliver to Debtors all such documentation which Debtors deem necessary to effectuate

10    a release of the applicable Liens against the Collateral of Debtors, and (ii) receive an Allowed

11    General Unsecured Claim for the amount due it in excess of $60,00,000, or approximately $744.00.

12        However, if the holder of the Wells Fargo Hm Mortgage Claim elected the option for

13    treatment under Section 1111(b)(2) of the Bankruptcy Code in accordance with Bankruptcy Rule

14    3014, the holder of the Allowed Claim shall receive, in full and final satisfaction of its Claim, equal

15    monthly installments over a period of 30 years, deferred cash payments totaling at least the amount of

16    the Allowed Claim, with a value as of the Effective Date of at least the holder's interest in the estate's

17    interest in the Collateral securing such Claim ($60,000). By no later than the later of (a) the Effective

18    Date or (b) fifteen (15) days after the Claim becomes an Allowed Secured Claim, Debtors shall

19    execute and deliver to the holder of the Wells Fargo Hm Mortgage Secured Claim an amended non-

20    recourse promissory note (the "Amended Wells Fargo Hm Mortgage Election Note") evidencing such

21    payment terms and bearing a 4.57% interest rate.

22        If the holder of the Wells Fargo Hm Mortgage Allowed Secured Claim has elected

23    such treatment under Section 1111(b)(2) it shall retain its Liens to secure repayment of the Amended

24    Wells Fargo Hm Mortgage Election Note until such Amended Wells Fargo Hm Mortgage Election

25    Note is fully paid or until the holder otherwise agrees. Upon satisfaction of the Amended Wells

26    Fargo Hm Mortgage Election Note, the holder thereof shall promptly execute and deliver to Debtors

27    all such documentation which Debtors deem necessary to effectuate a release of the holder's Liens

28    against Collateral of Debtors. The Amended Wells Fargo Hm Mortgage Election Note may be

43

1  prepaid by Debtors or on behalf of Debtors at any time without penalty; however, Debtors must pay

2  the difference between the Wells Fargo Hm Mortgage Allowed Claim and the outstanding balance

3  remaining due under the Amended Wells Fargo Hm Mortgage Election Note, plus the payments

4  made to the present. The holder of the Wells Fargo Hm Mortgage Secured Claim who has elected

5  treatment under Section 1111(b)(2) of the Bankruptcy Code shall have no recourse against Debtors.

6  In the event of a default under the Amended Wells Fargo Hm Mortgage Election Note, such recourse

7  shall be limited to the Collateral to which such Liens are attached.

8  **4.1.32. Class 32:  Bella Vita HOA- Impaired.**

9  <u>Impairment and Voting.</u> Class 32 consists of the Bella Vita HOA Claim consisting of

10  HOA dues. The Debtors estimate that Bella Vita HOA has a Claim in the amount of $400.00 that is

11  secured in the approximate amount of $400.00. The holder of the Bella Vita HOA Claim is impaired

12  under the Plan; consequently, the holder of the Bella Vita HOA Claim is entitled to vote on the Plan.

13  <u>Treatment.</u>    The holder of the Bella Vita HOA Claim shall be paid in full over a

14  period of 5 years with interest at the rate of 2% per annum.

15  **4.1.33. Class 33:  Casa Vegas HOA - Impaired.**

16  <u>Impairment and Voting.</u> Class 33 consists of the Casa Vegas HOA Claim consisting

17  of HOA dues. The Debtors estimate that the Casa Vegas HOA has a Claim in the amount of

18  $2,000.00 that is secured in the approximate amount of $2,000.00. The holder of the Casa Vegas

19  HOA Claim is impaired under the Plan; consequently, the holder of the Casa Vegas HOA Claim is

20  entitled to vote on the Plan.

21  <u>Treatment.</u>    The holder of the Casa Vegas HOA Claim shall be paid in full over a

22  period of 5 years with interest at the rate of 2% per annum.

23  **4.1.34. Class 34:  Creekside Owners Association - Impaired.**

24  <u>Impairment and Voting.</u> Class 34 consists of the Creekside Owners Association

25  Claim consisting of HOA assessments related to 3807 Aspen Creek Avenue, Las Vegas, Nevada

26  89031. The Debtors estimate that the Creekside Owners Association has a Claim in the amount of

27  $828.97 that is secured in the approximate amount of $828.97. The holder of the Creekside Owners

28  Association Claim is impaired under the Plan; consequently, the holder of the Creekside Owners

44

1   Association Claim is entitled to vote on the Plan.

2          Treatment.      The holder of the Creekside Owners Association Claim shall be paid in

3   full over a period of 5 years with interest at the rate of 2% per annum.

4          **4.1.35. Class 35:  Pine Knott Owners Association - Impaired.**

5          Impairment and Voting. Class 35 consists of the Pine Knott Owners Association

6   Claim consisting of HOA dues for a dock-slip in Big Bear Lake, California. The Debtors estimate

7   that the Pine Knott Owners Association has a Claim in the amount of $610.00 that is secured in the

8   approximate amount of $610.00.  The holder of the Pine Knott Owners Association Claim is

9   impaired under the Plan; consequently, the holder of the Pine Knott Owners Association Claim is

10  entitled to vote on the Plan.

11         Treatment.      The holder of the Pine Knott Owners Association Claim shall be paid

12  in full over a period of 5 years with interest at the rate of 2% per annum.

13         **4.1.36. Class 36:  Rancho Alexander Business Park - Impaired.**

14         Impairment and Voting. Class 36 consists of the Rancho Alexander Business Park

15  Claim consisting of HOA dues for an office building located on North Rancho, Las Vegas, Nevada.

16  The Debtors estimate that Rancho Alexander Business Park has a Claim in the amount of $2,000 that

17  is secured in the approximate amount of $2,000.  The holder of the Rancho Alexander Business Park

18  Claim is impaired under the Plan; consequently, the holder of the Rancho Alexander Business Park

19  Claim is entitled to vote on the Plan.

20         Treatment.      The holder of the Rancho Alexander Business Park Claim shall be paid

21  in full over a period of 5 years with interest at the rate of 2% per annum.

22         **4.1.37. Class 37:  Silverstone Ranch Association - Impaired.**

23         Impairment and Voting. Class 37 consists of the Silverstone Ranch Association Claim

24  consisting of HOA dues and fines. The Debtors estimate that Silverstone Ranch Association has a

25  Claim in the amount of $200.00 that is secured in the approximate amount of $200.00.  The holder

26  of the Silverstone Ranch Association Claim is impaired under the Plan; consequently, the holder of

27  the Silverstone Ranch Association Claim is entitled to vote on the Plan.

28         Treatment.      The holder of the Silverstone Ranch Association Claim shall be paid in

plan 073010

1    full over a period of 5 years with interest at the rate of 2% per annum.

2    **4.1.38. Class 38:  Southern Highlands Comm. Assoc. - Impaired.**

3      <u>Impairment and Voting.</u> Class 38 consists of the Southern Highlands Comm. Assoc.

4    Claim consisting of HOA fines relating to 3334 Palio Avenue, Las Vegas, Nevada 89141 in the

5    amount of $5,450.00. The Debtors estimate that Southern Highlands Comm. Assoc. has a Claim in

6    the amount of $5,450.00 that is unsecured.  The holder of the Southern Highlands Comm. Assoc.

7    Claim is impaired under the Plan; consequently, the holder of the Southern Highlands Comm. Assoc.

8    Claim is entitled to vote on the Plan.

9      <u>Treatment.</u>     The holder of the Southern Highlands Comm. Assoc. Claim shall be

10    paid in full over a period of 5 years with interest at the rate of 2% per annum.  This claim is disputed.

11    **4.1.39. Class 39:  Southern Highlands Comm. Assoc. - Impaired.**

12      <u>Impairment and Voting.</u> Class 39 consists of the Southern Highlands Comm. Assoc.

13    Claim consisting of HOA fines relating to 3348 Palio Avenue, Las Vegas, Nevada 89141 in the

14    amount of $14,750.00. The Debtors estimate that Southern Highlands Comm. Assoc. has a Claim in

15    the amount of $14,750.00 that is unsecured.  The holder of the Southern Highlands Comm. Assoc.

16    Claim is impaired under the Plan; consequently, the holder of the Southern Highlands Comm. Assoc.

17    Claim is entitled to vote on the Plan.

18      <u>Treatment.</u>     The holder of the Southern Highlands Comm. Assoc. Claim shall be

19    paid in full over a period of 5 years with interest at the rate of 2% per annum.  This claim is disputed.

20    **4.1.40. Class 40:  Symphony HOA. - Impaired.**

21      <u>Impairment and Voting.</u> Class 40 consists of the Symphony HOA Claim consisting of

22    HOA dues relating to 2606 S. Durango Drive, #187, Las Vegas, Nevada 89122 in the amount of

23    $122.00. The Debtors estimate that the Symphony HOA has a Claim in the amount of $122.00 that is

24    secured in the approximate amount of $122.00.  The holder of the Symphony HOA Claim is

25    impaired under the Plan; consequently, the holder of the Symphony HOA Claim is entitled to vote

26    on the Plan.

27      <u>Treatment.</u>     The holder of the Symphony HOA Claim shall be paid in full over a

28    period of 5 years with interest at the rate of 2% per annum.

plan 073010

### 4.1.42.    Class 42:  General Unsecured Claims - Impaired.

Impairment and Voting. Class 42 consists of General Unsecured Claims.  The Debtors estimate that General Unsecured Claims total $93,000. However, to this amount will be added the claims of secured creditors which are deemed to be unsecured. General Unsecured Claims are impaired by the Plan; consequently, the holders of General Unsecured Claims are entitled to vote on the Plan.

Treatment.  The holders of General Unsecured Claims, as a group, shall receive payments under the Plan of $250 per month for 60 months, a total of $15,000.  These funds will be distributed pro rata to the allowed unsecured claims at least annually.

**4.2**    **Reservation of Rights Regarding Claims**.  Except as otherwise explicitly provided in the Plan, nothing shall affect the Debtors' rights and defenses, both legal and equitable, with respect to any Claims.

### ARTICLE V
### ACCEPTANCE OR REJECTION OF THE PLAN

**5.1**    **Impaired Classes of Claims and Interests Entitled to Vote.**  Claim holders in each Impaired Class of Claims are entitled to vote as a class to accept or reject the Plan.  However, Class 22 and Class 28 are unimpaired under the Plan and are, therefore, presumed to accept the Plan.  Class 22 and Class 28 votes will not be solicited.

**5.2**    **Acceptance by an Impaired Class.**  In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

**5.3**    **Summary of Classes Voting on the Plan.**  The votes of holders of Claims in Classes all classes except Class 22 and Class 28 will be solicited with respect to this Plan.

**5.4**    **Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.**  To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, the Debtors will request confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of

47

plan 073010

the Bankruptcy Code.  The Debtors reserve the right to alter, amend, modify, revoke or withdraw the Plan or any Plan Exhibit or Schedule, including the right to amend or modify it to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

**ARTICLE VI**
**IMPLEMENTATION OF THE PLAN**

**6.1    Payments To Certain Classes.**  Payments to Allowed Claim holders as set forth herein and in the Plan will be made with the Cash earned by Debtors and monies from rents received from the Debtors' properties. Attached as Exhibit D hereto are the Cash Projections.

**6.2    Source of Funds.**  All funds necessary to pay creditors pursuant to the Plan shall come from the Cash earned by Debtors by their personal services and rental monies received by the Debtors from the Rental Properties.

**6.3    Preservation of Rights of Action**.  The Debtors shall obtain the rights to all claims, rights or causes of action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or the Estate may hold against any person or entity.  The Debtors shall also retain all Avoidance Actions.  The Debtors may pursue such retained Litigation Claims in the Bankruptcy Court for the benefit of all holders of Allowed Claims.  Except as otherwise provided in this Plan or the Confirmation Order, or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Debtors may, in their sole discretion, enforce, sue on, settle or compromise (or decline to do any of the foregoing) all Litigation Claims.

**6.4    Effectuating Documents; Further Transactions.**  The Debtors shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**6.5    Release And Avoidance of Liens.**  Except as otherwise provided for in the Plan, if the value of any other collateral, is less than the Allowed amount of these respective claims, the Plan shall constitute a motion pursuant to section 506(d) of the Bankruptcy Code to void any Liens on the respective collateral.  A list of all such voided Liens shall be filed with the Bankruptcy Court at least

48

ten (10) days prior to Confirmation and shall be served upon any known holders thereof. Further, pursuant to section 1142(b) of the Bankruptcy Code, the entry of the Confirmation Order shall constitute a direction by the Bankruptcy Court to the holders of all voided Liens to execute the documents necessary to release such voided Liens without further order of the Court.

**6.6     Management Of Debtors.** The Debtors are individuals and will be responsible for the continued management of their assets and liabilities. On and after the Effective Date, the Debtors shall (i) keep all of its assets in good repair and operation, (ii) maintain appropriate levels of insurance, (iii) timely file all tax returns and other financial information and reports required by law or applicable regulations, (iv) keep and maintain in good standing all permits, licenses and approvals applicable to the Debtors to conduct their business operations, and (v) take all actions necessary under the Plan.

The Debtors shall continue to expend such funds as are necessary to pay for their customary living expenses.

**6.7     Exemption From Certain Transfer Taxes.** Pursuant to section 1146(c) of the Bankruptcy Code, any transfers from the Debtors to the Debtors or any other Person or entity pursuant to the Plan in the United States shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**6.8     Post-confirmation matters.** Except as otherwise set forth in the Plan, on and after the Effective Date, without need for further action by the members or managers of the Debtors or the Debtors, and without further order of the Bankruptcy Court, the Debtors shall be appointed Estate Representative under section 1123 of the Bankruptcy Code and, by and through its management, shall be solely responsible for and shall have authority to: (a) make all Distributions required to be made on or after the Effective Date to the holders of Allowed Claims; (b) settle, resolve and object

plan 073010

to Claims; (c) pay all fees payable under 28 U.S.C. § 1930; (d) file any post-Confirmation reports required by the Bankruptcy Code or the Bankruptcy Court; (e) retain, employ and utilize such Professionals as may be necessary without further approval of the Bankruptcy Court; (f) do all things necessary and appropriate to fulfill the duties and obligations of the Debtors and the Debtors under the Plan, the Confirmation Order, the Bankruptcy Code and the Bankruptcy Rules; and (g) move for the entry of a Final Decree and prepare and file any pleadings as may be required by the Bankruptcy Court in connection with the Final Decree and the closing of the Chapter 11 Case.

### ARTICE VII
### CONDITIONS PRECEDENT

**7.1     Condition to Confirmation**. It is a condition precedent to Confirmation that the Bankruptcy Court enter a Confirmation Order in form and substance reasonably acceptable to the Debtors.

**7.2     Conditions to Effectiveness**. The following are conditions precedent to the occurrence of the Effective Date:

(a)     the Confirmation Date shall have occurred;

(b)     the Confirmation Order shall be a Final Order, except that the Debtors reserve the right to cause the Effective Date to occur notwithstanding the pendency of an appeal of the Confirmation Order under circumstances that such parties believe would moot such appeal;

(c)     no request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, remain pending; and

(d)     the Debtors shall have received all approvals necessary or appropriate to substantially consummate the Plan and enter into the related Plan Documents.

**7.3     Waiver of Conditions.** Conditions to Confirmation and the occurrence of the Effective Date may be waived in whole or in part by the Debtors at any time without notice, an order of the Bankruptcy Court, or any further action other than proceeding to Confirmation and consummation of the Plan.

**7.4     Failure of Conditions.** If the Effective Date shall not occur, the Debtors and all other parties in interest shall retain all their rights and remedies as if the Plan had not been proposed.

50

plan 073010

Among other things, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver of any Claims against or Equity Interests in the Debtors or (b) prejudice in any manner the rights of the Debtors.

**ARTICLE VIII**
**TREATMENT OF EXECUTORY CONTRACTS AND LEASE**

### 8.1 Rejection of Executory Contracts and Unexpired Leases

All unexpired leases and executory contracts of the Debtors, other than those set forth on Schedule 8.2 to the Plan, shall be rejected by the Debtors as of the Effective Date pursuant to Section 365(a) of the Bankruptcy Code. The Plan shall constitute a motion to reject the executory contracts and unexpired leases rejected pursuant to this section, and the Debtors shall have no liability thereunder except as is specifically provided in the Plan. Entry of the Confirmation Order shall constitute approval of such rejections pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejected agreement, executory contract or unexpired lease is burdensome and that the rejection thereof is in the best interests of the Debtors and their estate.

### 8.2    Assumed Contracts

The Plan shall constitute a motion to assume such executory contracts and unexpired leases as set forth in Schedule 8.2 of the Plan. Entry of the Confirmation Order shall constitute approval of such assumption pursuant to sections 365(a) and (b) of the Bankruptcy Code. Any non-debtor counterparty to an agreement listed on Schedule 8.2 who disputes the assumption of an executory contract or unexpired lease must file with the Bankruptcy Court, and serve upon the Debtors, a written objection to the assumption, which objection shall set forth the basis for the dispute by not later than ten (10) days prior to the Confirmation Hearing. The failure to timely object shall be deemed a waiver of any and all objections to the assumption of executory contracts and leases as set forth in Schedule 8.2.

**As of the date hereof, the Debtors intend to assume all of the leases with its tenants.**

### 8.3    Bar Date

All proofs of claim with respect to claims arising form the rejection of any unexpired lease or

51

plan 073010

executory contracts shall be filed with the Bankruptcy Court and served on Debtors' counsel no later than thirty (30) days after the Effective Date.  The holder of any Claim not filed within such time shall be forever barred from asserting any such Claim or receiving any Distribution on account of such Claim.  Any Claims resulting from the rejection of executory contracts shall be classified as General Unsecured Claims for purposes of the Plan.

**ARTICLE IX**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**9.1     Distributions**.  In order to facilitate Distributions to holders of Allowed Claims, and if and to the extent there are Disputed Claims in any Class, the  Debtors shall set aside in a Contingency Reserve account the payments or Distributions applicable to such Disputed Claims as if such Disputed Claims were Allowed Claims, pending the allowance or disallowance of such Disputed Claims.  In the event that the Debtors wish to deposit or hold a lesser amount than required herein and is unable to reach an agreement with the holder of the Disputed Claim, on the amount to be deposited or held, the Bankruptcy Court shall fix the amount after notice and hearing.  Upon Final Order with respect to a Disputed Claim, the holder of such Disputed Claim, to the extent it has been determined to be an Allowed Claim, shall receive from the  Debtors that payment or Distribution to which it would have been entitled if the portion of the Claim so allowed had been allowed as of the Effective Date.  Such payment or distribution shall be made as soon as practical after the order allowing the Claim has become a Final Order.

**9.2     Means of Payment.**  Cash payments made pursuant to this Plan shall be in U.S. funds, by the means agreed to by the payor and the payee, including by check or wire transfer, or, in the absence of an agreement, such commercially reasonable manner as the payor shall determine in its sole discretion.

**9.3     Delivery of Distributions.**  Distributions to holders of Allowed Claims shall be made by the Debtors (a) at the addresses set forth on the proofs of Claim filed by such holders (or at the last known addresses of such holders if no proof of Claim is filed or if the Debtors have been notified of a change of address), (b) at the addresses set forth in any written notice of address changes delivered to the Debtors after the date of any related proof of Claim, (c) at the addresses

52

plan 073010

1   reflected in the Schedules if no proof of Claim has been filed and the Debtors have not received a
2   written notice of a change of address.  If any holder's distribution is returned as undeliverable, no
3   further distributions to such holder shall be made unless and until the Debtors are notified of the
4   holder's then current address, at which time all missed distributions shall be made to the holder
5   without interest from the date that the distribution was returned as undeliverable.  Amounts in
6   respect of undeliverable distributions made by the Debtors shall be returned to the Debtors until such
7   distributions are claimed.  All claims for undeliverable distributions made by the Debtors must be
8   made on or before the second (2nd) anniversary of the Effective Date, after which all unclaimed
9   property shall revert to the Debtors free of any restrictions thereon and the claim of any holder or
10  successor to such holder with respect to such property shall be discharged and forever barred,
11  notwithstanding any federal or state escheat laws to the contrary.  Nothing contained in the Plan
12  shall require the Debtors or Debtors, or any representative or agent of these parties, to attempt to
13  locate any holder of an Allowed Claim or Interest.

14      **9.4    Withholding And Reporting Requirements.**  In connection with this Plan, and all
15  distributions hereunder, the Debtors shall, to the extent applicable, comply with all tax withholding
16  and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing
17  authority, and all distributions hereunder shall be subject to any such withholding and reporting
18  requirements.  The Debtors shall be authorized to take any and all actions that may be necessary or
19  appropriate to comply with such withholding and reporting requirements.  Notwithstanding any
20  other provision of the Plan: (a) each holder of an Allowed Claim that is to receive a distribution
21  pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of
22  any tax obligations imposed by any governmental unit, including income, withholding and other tax
23  obligations, on account of such distribution, and (b) no distribution shall be made to or on behalf of
24  such holder pursuant to the Plan unless and until such holder has made arrangements satisfactory to
25  the Debtors for the payment and satisfaction of such tax obligations.

26      **9.5    Setoffs.**  The  Debtors may, but shall not be required to, set off against any Claim,
27  and the payments or other distributions to be made pursuant to the Plan in respect of such Claim,
28  claims of any nature whatsoever that the Debtors or  Debtors may have against the holder of such

53

Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claim that the Debtors or Debtors may have against such holder.

## ARTICLE X
## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS AND DISPUTED INTERESTS

**10.1    Prosecution Of Objections.**  After the Confirmation Date, only the Debtors shall have the authority to file objections, settle, compromise, withdraw or litigate to judgment objections to Claims.  From and after the Effective Date, the Debtors may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.

**10.11    No Distributions Pending Allowance.**  Notwithstanding any other provision of the Plan, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

## ARTICLE XI
## RETENTION OF JURISDICTION

**11.1**    Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

**11.11**    Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest not otherwise allowed under the Plan, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Interests;

**11.12**    Hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, the payment of the fees and expenses of the retained Professionals of the Debtors shall be made in the ordinary course of

plan 073010

1   business and shall not be subject to the approval of the Bankruptcy Court;

2       **11.13**   Hear and determine all matters with respect to the assumption or rejection of any

3   executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor

4   may be liable, including, if necessary, the nature or amount of any required cure or the liquidation or

5   allowance of any Claims arising therefrom;

6       **11.14**   Effectuate performance of and payments under the provisions of the Plan;

7       **11.15**   Hear and determine any and all adversary proceedings, motions, applications, and

8   contested or litigated matters arising out of, under, or related to, the Chapter 11 Case;

9       **11.16**   Enter such orders as may be necessary or appropriate to execute, implement, or

10  consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements

11  or documents created in connection with the Plan, the Disclosure Statement or the Confirmation

12  Order;

13      **11.17**   Hear and determine disputes arising in connection with the interpretation,

14  implementation, consummation, or enforcement of the Plan, including disputes arising under

15  agreements, documents or instruments executed in connection with the Plan;

16      **11.18**   Consider any modifications of the Plan, cure any defect or omission, or reconcile any

17  inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation

18  Order;

19      **11.19**   Issue injunctions, enter and implement other orders, or take such other actions as may

20  be necessary or appropriate to restrain interference by any entity with implementation,

21  consummation, or enforcement of the Plan or the Confirmation Order;

22      **11.20**   Enter and implement such orders as may be necessary or appropriate if the

23  Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

24      **11.21**   Hear and determine any matters arising in connection with or relating to the Plan, the

25  Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other

26  agreement or document created in connection with the Plan, the Disclosure Statement or the

27  Confirmation Order;

28      **11.22**   Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications

plan 073010

and rulings entered in connection with the Chapter 11 Case;

**11.23**   Except as otherwise limited herein, recover all assets of the Debtors and property of the Debtors' Estate, wherever located;

**11.24**   Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

**11.25**   Hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge;

**11.26**   Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

**11.27**   Enter a final decree closing the Chapter 11 Case.

## ARTICLE XII
## TITLE TO PROPERTY; DISCHARGE; INJUNCTION

**12.1**   **Revesting of Assets.**  Subject to the provisions of this Plan, the property of the Estate shall vest in the Debtors, subject to the limitations set forth herein, on the Effective Date.  As of the Effective Date, all such property of the Debtors shall be free and clear of all liens except as otherwise provided herein.  From and after the Effective Date, Debtors may  use, acquire and dispose of its property free of any restriction of the Bankruptcy Code, including the employment of and payment to professionals, except as set forth herein.

**12.2**   **Discharge.**  As set forth under 11 U.S.C. § 1141(d)(5), confirmation of the plan and completion of all payments under the Plan, or as so ordered by the Court if the Debtors have not completed payments, may serve as a discharge and release of all Claims or other debt that arose before the Confirmation Date, and all debts of the kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not: (a) a proof of Claim based on such debt is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code; (b) a Claim based on such debt is allowed pursuant to Section 502 of the Bankruptcy Code; or (c) the holder of a Claim based on such debt has accepted this Plan, including any interest accrued on Claims from the Petition Date.

**12.3**   **Injunction.**  *__Except as provided in this Plan or the Confirmation Order, all entities that have held, currently hold, or may hold a Claim or other debt or liability that is discharged or__*

plan 073010

1  *an Equity Interest or other right of an equity security holder that is affected pursuant to the terms*

2  *of this Plan are permanently enjoined from taking any of the following actions on account of any*

3  *such discharged Claims, debts or liabilities or rights: (i) commencing or continuing in any*

4  *manner any action or other proceeding against the Debtors and  Debtors or their respective*

5  *property; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award,*

6  *decree, or order against the Debtors or  Debtors or their respective property; (iii) creating,*

7  *perfecting, or enforcing any lien or encumbrance against the Debtors or  Debtors or their*

8  *respective property; (iv) asserting a set off, right of subrogation or recoupment of any kind against*

9  *any debt, liability, or obligation due to the Debtors or  Debtors or their respective property; and (v)*

10  *commencing or continuing any action, in any manner or any place, that does not comply with or*

11  *is inconsistent with the provisions of this Plan or the Bankruptcy Code.*

12        **12.4  Exculpation**.  *Neither Debtors nor  Debtors nor any of their employees, advisors,*

13  *attorneys, or agents, shall have or incur any liability to any holder of a Claim or Equity Interest,*

14  *or any other party in interest, or any of their respective agents, employees, representatives,*

15  *financial advisors, attorneys, or any of their successors or assigns, for any act or omission in*

16  *connection with, relating to, or arising out of, the Chapter 11 Case, the pursuit of confirmation of*

17  *this Plan, the consummation of this Plan, except for their breaches of fiduciary duty, negligence,*

18  *and willful misconduct, and in all respects shall be entitled to reasonably rely upon advice of*

19  *counsel with respect to their duties and responsibilities under this Plan or in the context of the*

20  *Chapter 11 Case.   No holder of a Claim or Equity Interest, or any other party in interest,*

21  *including their respective agents, employees, representatives, financial advisors or attorneys, shall*

22  *have any right of action against Debtors,  Debtors, or any of their respective present or former*

23  *members, officers, directors, employees, advisors, attorneys, or agents, for any act or omission in*

24  *connection with, relating to, or arising out of, the Chapter 11 Case, the pursuit of confirmation of*

25  *this Plan, the consummation of this Plan or the administration of this Plan, except for their*

26  *breaches of fiduciary duty, negligence, and willful misconduct.*

27        **12.5  Judgments Void**.  Any judgment obtained before or after the Confirmation Date in

28  any court other than the Bankruptcy Court shall be null and void as a determination of the liability of

plan 073010

the Debtors with respect to any debt discharged.

## ARTICLE XIII
## MODIFICATION, AMENDMENT, AND WITHDRAWAL OF PLAN

**13.1    Modification and Amendment.**  Prior to Confirmation, any of the proponents may alter, amend, or modify this Plan or any Exhibits thereto under Section 1127(a) of the Bankruptcy Code at any time.  After the Confirmation Date and prior to substantial consummation of this Plan as defined in Section 1101(2) of the Bankruptcy Code, the proponent may, under Section 1127(b), (c), and (d) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, to make appropriate adjustments and modifications to this Plan or the Confirmation Order as may be necessary to carry out the purposes and effects of this Plan so long as such proceedings do not materially adversely affect the treatment of holders of Claims or Interests under this Plan.

**13.2    Withdrawal of Plan.**  Prior to Confirmation, the proponent may withdraw this Plan.

**13.3    Revocation or Withdrawal of this Plan.**  If this Plan is withdrawn or revoked, then this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver of any Claims against the Debtors or any other person, nor shall the withdrawal or revocation of this Plan prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.  In the event this Plan is withdrawn or revoked, nothing set forth herein shall be deemed an admission of any sort and this Plan and any transaction contemplated thereby shall not be admitted into evidence in any proceeding.

**13.4    Severability Of Plan Provisions.**  If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and

plan 073010

effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## ARTICLE XIV
## ACCEPTANCE OR REJECTION OF THE PLAN

**14.1    Impaired Classes to Vote.**  Each holder of a Claim or Equity Interest in an impaired Class shall be entitled to vote separately to accept or reject the Plan unless such holder is deemed to accept or reject the Plan.

**14.2    Acceptance by Class of Creditors.**  An impaired Class of holders of Claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims of such Class that have voted to accept or reject the Plan.

**14.3    Cramdown.**  If any impaired Class of Claims or Equity Interests entitled to vote shall not accept the Plan by the requisite statutory majorities provided in section 1126(c) or section 1126(d) of the Bankruptcy Code, the Debtors reserve the right to request that the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code.

## ARTICLE XV
## TITLE TO PROPERTY; DISCHARGE; INJUNCTION

**15.1    Revesting of Assets.**  Subject to the provisions of this Plan, the property of the Estate shall vest in the Debtors, subject to the limitations set forth herein, on the Effective Date.  As of the Effective Date, all such property of the Debtors shall be free and clear of all liens except as otherwise provided herein.  From and after the Effective Date, Debtors may use, acquire and dispose of its property free of any restriction of the Bankruptcy Code, including the employment of and payment to professionals, except as set forth herein.

**15.2    Discharge.**  As set forth under 11 U.S.C. § 1141(d)(5), confirmation of the plan and completion of all payments under the Plan, or as so ordered by the Court if the Debtors has not completed payments, may serve as a discharge and release of all Claims or other debt that arose

plan 073010

before the Confirmation Date, and all debts of the kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not: (a) a proof of Claim based on such debt is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code; (b) a Claim based on such debt is allowed pursuant to Section 502 of the Bankruptcy Code; or (c) the holder of a Claim based on such debt has accepted this Plan, including any interest accrued on Claims from the Petition Date.

**15.3** **Injunction.** Except as provided in this Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold, or may hold a Claim or other debt or liability that is discharged or an Equity Interest or other right of an equity security holder that is affected pursuant to the terms of this Plan are permanently enjoined from taking any of the following actions on account of any such discharged Claims, debts or liabilities or rights: (i) commencing or continuing in any manner any action or other proceeding against the Debtors or their property; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the Debtors or their property; (iii) creating, perfecting, or enforcing any lien or encumbrance against the Debtors or their property; (iv) asserting a set off, right of subrogation or recoupment of any kind against any debt, liability, or obligation due to the Debtors or their property; and (v) commencing or continuing any action, in any manner or any place, that does not comply with or is inconsistent with the provisions of this Plan or the Bankruptcy Code.

**15.4** **Exculpation.** Neither the Debtors nor any of their employees, advisors, attorneys, or agents, shall have or incur any liability to any holder of a Claim or Equity Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the pursuit of confirmation of this Plan, the consummation of this Plan, except for their willful misconduct, and in all respects shall be entitled to reasonably rely upon advice of counsel with respect to their duties and responsibilities under this Plan or in the context of the Chapter 11 Case. No holder of a Claim or Equity Interest, or any other party in interest, including their respective agents, employees, representatives, financial advisors or attorneys, shall have any right of action against Debtors, or any of their present or former agents, employees, representatives, financial advisors, attorneys, for any act or omission in connection with, relating to, or arising out of,

plan 073010

the Chapter 11 Case, the pursuit of confirmation of this Plan, the consummation of this Plan or the administration of this Plan, except for their willful misconduct.

## ARTICLE XVI
## MISCELLANEOUS

**16.1     Professional Fee Claims.**  All final requests for compensation or reimbursement of Professional Fees pursuant to sections 327, 328, 330, 331, 503(b) or ll03 of the Bankruptcy Code for services rendered to the Debtors or any creditors' committee (if one has been appointed) prior to the Effective Date and substantial contribution Claims under section 503(b)(4) of the Bankruptcy Code must be filed and served on the  Debtors and its counsel no later than sixty (60) days after the Confirmation Date, unless otherwise ordered by the Bankruptcy Court.  Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be filed and served on the Debtors and their counsel and the requesting Professional or other entity no later than thirty (30) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was served.

**16.2     Administrative Claims Bar Date.**  All requests for payment of an Administrative Claim must be filed and set for hearing with the Bankruptcy Court and served on counsel for the Debtor, Debtors, and office of the United States Trustee no later than the close of business (Pacific Time) no later than 60 days after the Confirmation Date.  Unless a party in interest objects to an Administrative Claim within thirty (30) Business Days after receipt, such Administrative Claim may be deemed allowed in the amount requested and shall receive payment as set forth herein.  In the event that a party in interests objects to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim.

**16.3     Compromises and Settlements.**  Pursuant to Fed. R. Bankr. P. 9019(a), the Debtors may compromise and settle various Claims against it and or claims that it may have against other persons.  On the Effective Date, such right shall pass to the Debtors.

**16.4     Payment Of Statutory Fees.**  All fees payable pursuant to Section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation shall be paid on or before the Effective Date. The Debtors will continue to make the U.S. Trustee's quarterly fees

plan 073010

until the case is closed.  The amount of fees will be established by the post-petition operating reports of the Debtors.

**16.5    Binding Effect.**  This Plan shall be binding upon, and shall inure to the benefit of, the Debtors, and the holders of all Claims and Equity Interests and their respective successors and assigns.

**16.6    Governing Law.**  Except to the extent that the Bankruptcy Code or other federal law is applicable or as provided in any document contained in the Plan or in any document which remains unaltered by this plan, the rights, duties, and obligations of the Debtors and any other person arising under this Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Nevada without giving effect to Nevada's choice of law provisions.

**16.7    Notices.**  Any notice required or permitted to be provided under this Plan shall be in writing and served by either: (a) certified mail, return receipt required, postage prepaid; (b) hand delivery; or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

If to Debtors, to:

> David and Karol Speckman
> 1414 Oliver Avenue
> San Diego, CA 92109

With a copy to:

> Lenard E. Schwartzer, Esq.
> Schwartzer & McPherson Law Firm
> 2850 S. Jones Blvd., Suite 1
> Las Vegas, NV  89146
> Telephone:  (702) 228-7590
> Facsimile:  (702) 892-0122

**16.8    Solicitation.**  Pursuant to Section 1125(e) of the Bankruptcy Code, a person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title, or that participates, in good faith, and incompliance with the applicable provisions of this title, in the offer, issuance, sale, or purchase of a security, offered or sold under the plan, of the debtors, of an affiliate participating in a joint plan with the debtors, or of a newly organized successor to the debtors under the plan, is not liable, on account of such solicitation or

62

1  participation, for violation of any applicable law, rule, or regulation governing

2  solicitation of acceptance or rejection of a plan or the offer, issuance, sale, or purchase of securities.

3      **16.9    Final Decree.**  After the Estate is fully administered, the Debtors shall file an

4  application for a Final Decree, and shall serve the application on the U.S. Trustee, together with a

5  proposed Final Decree.

6      Respectfully submitted this 30th day of July, 2010.

7

8                              DAVID  SPECKMAN

9

10

11                             KAROL SPECKMAN

12

13

14

15  Prepared by:

16  SCHWARTZER & McPHERSON LAW FIRM

17

18  By:
    Lenard E. Schwartzer, Esq.
19  *Counsel for the Debtors and Debtors in Possession*
    *And Plan Proponent*
20

21

22

23

24

25

26

27

28

plan 073010